No. 11-3228

# IN THE
# UNITED STATES COURT OF APPEALS
# FOR THE SEVENTH CIRCUIT

ELLIOT DON RAY,

*Petitioner-Appellant*,

v.

MARC CLEMENTS,

*Respondent-Appellee*.

Appeal from the United States District Court
for the Eastern District of Wisconsin
Case No. 1:07-cv-00190-WCG
The Honorable William C. Griesbach

**BRIEF OF PETITIONER-APPELLANT ELLIOT DON RAY**

Jeetander T. Dulani
Thomas C. Hill
PILLSBURY WINTHROP SHAW PITTMAN LLP
2300 N Street N.W.
Washington, D. C. 20037-1122
(202 ) 663-5000
*Attorneys for Petitioner-Appellant*

ORAL ARGUMENT REQUESTED

**CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No.:          11-3228

Short Caption:          **Elliot Don Ray v. Marc Clements**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing the item #3):

      a.     Elliot Don Ray

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

      b.     Pillsbury Winthrop Shaw Pittman LLP

(3)    If the party of amicus is a corporation:

- Identify all its parent corporations, if any; and

      i.     N/A

- list any publicly held company that owns 10% or more of the party's or amicus' stock:

      ii.     N/A


Attorney's Signature:   _/s/ Jeetander T. Dulani_____     Date:   December 9, 2011

Attorney's Printed Name:          Jeetander T. Dulani*_____

Address:          Pillsbury Winthrop Shaw Pittman LLP_____

      2300 N Street N.W._____

      Washington, D. C. 20037-1122_____

      *Counsel of Record_____

Phone Number:          (202) 663-5000_____

Fax Number:          (202) 663-8007_____

E-Mail Address:          jeetander.dulani@pillsburylaw.com_____

## CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No.:          11-3228

Short Caption:               **Elliot Don Ray v. Marc Clements**

(4)     The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing the item #3):

      a.     Elliot Don Ray

(5)     The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

      b.     Pillsbury Winthrop Shaw Pittman LLP

(6)     If the party of amicus is a corporation:

- Identify all its parent corporations, if any; and

      i.     N/A

- list any publicly held company that owns 10% or more of the party's or amicus' stock:

      ii.     N/A


Attorney's Signature: __/s/ Thomas C. Hill_____     Date: December 9, 2011

Attorney's Printed Name:          Thomas C. Hill

Address:                          Pillsbury Winthrop Shaw Pittman LLP

                             2300 N Street N.W.

                             Washington, D. C. 20037-1122

Phone Number:                     (202) 663-5000

Fax Number:                       (202) 663-8007

E-Mail Address:                   thomas.hill@pillsburylaw.com

# TABLE OF CONTENTS

**Page**

CIRCUIT RULE 26.1 DISCLOSURE STATEMENT ................................................................... i

CIRCUIT RULE 26.1 DISCLOSURE STATEMENT .................................................................. ii

TABLE OF AUTHORITIES .......................................................................................................v

STATEMENT OF JURISDICTION............................................................................................1

STATEMENT OF ISSUES .........................................................................................................2

STATEMENT OF THE CASE.....................................................................................................3

STATEMENT OF FACTS ...........................................................................................................5

      I.      Case Remanded to Allow Development of the Record on Timeliness...................5

      II.     State Took No Steps to Develop the Record ..........................................................5

      III.   Evidence at Hearing ...............................................................................................6

STANDARD OF REVIEW .......................................................................................................12

SUMMARY OF ARGUMENT ..................................................................................................12

ARGUMENT .............................................................................................................................16

      I.      Ray's Affidavit Shifted the Burden of Proof to the State ....................................16

      II.     District Court Blindly Excused the State's Evidentiary Failure ...........................17

      III.   State's Burden of Proof Does Not Depend on Whether a Prisoner Has Pro-Bono Counsel......................................................................................................18

      IV.   The State Was In The Best Position To Gather Evidence From CCA .................20

      V.    The Limited Evidence Presented By the State Failed to Rebut Mr. Ray's Affidavit...............................................................................................................22

      VI.   Claiming that Evidence is Self Serving Is Not Enough.......................................23

CONCLUSION...........................................................................................................................24

CERTIFICATE OF COMPLIANCE WITH FED. R. APP. P. 32(a)(7).......................................26

CERTIFICATE OF COMPLIANCE WITH CIRCUIT RULE 30(d) ..........................................27

CERTIFICATE OF SERVICE ......................................................................................................28

CIRCUIT RULE 30 APPENDIX TABLE OF CONTENTS ..........................................................29

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Allen v. Culliver*,
    471 F.3d 1196 (11th Cir. 2006) ........................................................................17

*Anthony v. Cambra*,
    236 F.3d 568 (9th Cir. 2000) ..........................................................................13

*Bintz v. Bertrand*,
    403 F.3d 859 (7th Cir. 2005) ..........................................................................12

*Caldwell v. Amend*,
    30 F.3d 1199 (9th Cir. 1994) ......................................................................17, 18

*Campbell v. Henry*,
    614 F.3d 1056 (9th Cir. 2010) ........................................................................14

*Cross v. Hardy*,
    632 F.3d 356 (7th Cir. 2011) ..........................................................................12

*Day v. McDonough*,
    547 U.S. 198 (2006)........................................................................................17

*Denny v. Gudmanson*,
    252 F.3d 896 (7th Cir. 2001) ..........................................................................12

*Dole v. Chandler*,
    438 F.3d 804 (7th Cir. 2006) ..........................................................................20

*Edwards v. U.S.*,
    266 F.3d 756 (7th Cir. 2001) ..........................................................................17

*Fernandez v. Artuz*,
    402 F.3d 111 (2d Cir. 2005)............................................................................14

*Gildon v. Bowen*,
    384 F.3d 883 (7th Cir. 2004) ..........................................................................17

*Houston v. Lack*,
    487 U.S. 266 (1988)....................................................................13, 14, 17, 20

*Jardine v. Dittman*,
   658 F.3d 772 (7th Cir. 2011) ...................................................................15, 22

*Jones v. Bertrand*,
   171 F.3d 499 (7th Cir. 1999) ...........................................................................13

*Parker v. Evans*,
   2009 WL. 3634719 (7th Cir. 2009) ..................................................................16

*Ryan v. U.S.*,
   657 F.3d 604 (7th Cir. 2011) ...................................................................15, 23

*U.S. v. Marshall*,
   157 F.3d 477 (7th Cir. 1998) ...........................................................................12

*United States v. Craig*,
   368 F.3d 738 (7th Cir. 2004) ...........................................................................16

*Wilson v. McRae's Inc.*,
   413 F.3d 692 (7th Cir. 2005) ...................................................................23, 24

**STATUTES**

28 U.S.C. §§ 1291......................................................................................................1

28 U.S.C. § 2254...............................................................................................1, 3, 4

28 U.S.C. § 2254(d) ..................................................................................................12

Fed. R. App. P. 4(c)(1)..........................................................................2, 12, 14, 16, 17

Wis. Stat. § 974.06......................................................................................... *passim*

**OTHER AUTHORITIES**

Oklahoma DOC Security Policy OP-040111………………………………………………………… 8

U.S. Const. Amend. VI……………………………………………………………………..2, 3, 5, 24

## STATEMENT OF JURISDICTION

This appeal is taken from an opinion and final judgment entered on August 23, 2011, by the United States District Court for the Eastern District of Wisconsin.  A-07 – A-25.[1]  Mr. Ray filed his notice of appeal on September 20, 2011 and on September 29, 2011, the District Court granted Petitioner-Appellant Elliot Ray's request for a certificate of appealability for the denial of his habeas petition under 28 U.S.C. § 2254.  A-01, A-26.  The district court had jurisdiction over this matter pursuant to §§ 1331, 2241.  This Court has jurisdiction over the appeal under 28 U.S.C. §§ 1291, 2254.

---

[1]  For the Court's convenience, all record materials cited in this brief are reproduced and consecutively paginated in the accompanying Circuit Rule 30(a) appendix, cited as "A- " (Required Appendix) and "SA- " (Separate Appendix)..

## STATEMENT OF ISSUES

1.      Whether after this Court had found that Mr. Ray's Sixth Amendment rights had been violated, the District Court's decision on remand that Mr. Ray's habeas petition was untimely under 2244(d) improperly placed the burden of proof on Mr. Ray, after he had met the requirements of the mailbox rule as required by Fed. R. App. P. 4(c)(1), and when the State failed to provide any documentary or testimonial evidence to rebut Mr. Ray's sworn affidavit and testimony.

## STATEMENT OF THE CASE

This case represents an appeal of an order dated August 23, 2011, issued by the United States District Court for the Eastern District of Wisconsin on remand from this Court (having reversed the district court's prior denial of Appellant's petition for writ of habeas corpus), in which the district court again denied Appellant's petition for writ of habeas corpus.

On July 18, 2008 Mr. Ray filed a notice of appeal from the district court's summary dismissal of his federal habeas petition pursuant to Rule 4 of the Rules Governing 28 U.S.C. § 2254 cases. SA-303. The district court granted Mr. Ray's request for a certificate of appealability on July 22, 2008, to address whether the trial court's admission of hearsay statements of named co-actors through the testimony of a police detective violated the Sixth Amendment's confrontation clause. SA-322 – SA-323. This appeal was captioned *Elliot Don Ray v. Ana Boatwright*, bearing appeal No. 08-2825. A-38.

After briefing and oral argument, this Court issued a decision on January 21, 2010, reversing the district court's denial of habeas relief and ruling in favor of Mr. Ray on the merits – finding that his conviction was the result of a violation of his Sixth Amendment right to confrontation. A42 – A-54. The Court also considered the State's unsupported assertion that Mr. Ray's "habeas petition should be barred because it was untimely" and found "no evidence on the record to support the government's assertions" noting that the "record currently reflects that Ray served a copy of his pro se post conviction petition to prison officials on April 27, 2004." A-52 – A-53. But because the State had not developed the record on the timeliness issues, this Court remanded the case "to the district court so that *the government* may have an opportunity to develop the record on this issue" (emphasis added) and instructed "the district court to grant the petition for writ of habeas corpus" if the petition was timely. A-53.

The State unsuccessfully petitioned this Court for review and *en banc* review, and an amended opinion was issued on April 1, 2010 affirming the earlier panel decision. The amended opinion also explained that the State had waived any arguments "that Ray failed to exhaust his state remedies or procedurally defaulted his constitutional arguments" and clarified that the "clear violation of Ray's constitutional right of confrontation" was not harmless and "seriously affected the fairness of the judicial proceedings, [and] resulted in a decision that was contrary to clearly established federal law." A-51 – A-52. The State filed a petition for *certiorari* on June 30, 2010 which was denied on November 15, 2010. A-55.

The district court held a status conference on December 7, 2010, and the State filed a motion to dismiss on December 21, 2010. A-31. Mr. Ray filed an opposition to the motion to dismiss and a motion for summary judgment on January 20, 2011, along with a *sur-reply* on February 21, 2011. A-32.

In an order dated April 22, 2011, the district court denied the State's motion to dismiss and Mr. Ray's motion for summary judgment, held that the prison mailbox rule applied, and ordered an evidentiary hearing to be held. A-65, A-67-A-71. The district court directed that Mr. Ray should testify at the hearing. A-70, A-33. An evidentiary hearing was held on July 28, 2011, and the district court denied Mr. Ray's habeas petition under 28 U.S.C. § 2254 on August 23, 2011. A-07 – A-24.

Mr. Ray filed a notice of appeal on September 20, 2011. A-01. The district court granted Ray's request for a certificate of appealability on September 29, 2011 concluding that Ray "made a substantial showing on the issue of whether his petition was timely under the AEDPA rules." A-26.

4

## STATEMENT OF FACTS

**I.     Case Remanded to Allow Development of the Record on Timeliness**

On January 21, 2010, this Court held that errors in the criminal trial of Petitioner Elliot Don Ray warranted habeas relief, but remanded the case to the Eastern District of Wisconsin to decide a single remaining procedural question of whether Ray's habeas petition was timely filed. A-52 – A-53.  In response to the State's timeliness argument (raised by the State for the first time on appeal) this Court observed that there was "no evidence in the record to support the government's assertions" that Ray's petition was untimely.  A-53.  And "[t]he record currently reflects that Ray served a copy of his pro se postconviction petition to prison officials on April 27, 2004"—a date undisputedly within the applicable limitations period.  *Id*.  Nevertheless, in an abundance of caution, this Court remanded the case to the district court "so that *the government* may have an opportunity to develop the record on this issue."  *Id*. (emphasis added).  This Court denied the State's petition for review and *en banc* review, and issued an amended opinion on April 1, 2010 that affirmed that the violation of Mr. Ray's Sixth Amendment confrontation right warranted habeas relief and remanded the case to the district court to allow the State to develop the record on the timeliness issue.  A-42 – A-54.

**II.     State Took No Steps to Develop the Record**

Contrary to this Court's directive, the State did not take any steps to further "develop the record."  A-53, SA-114.  On April 27, 2004, Mr. Ray was being held at the Diamondback Correctional Facility in Oklahoma ("Diamondback"), which was under contract with the State of Wisconsin to house its prisoners.  The State admitted to not contacting anyone at Diamondback or its corporate parent Corrections Corporation of America ("CCA") until after the Supreme Court denied the State's certiorari petition on November 15, 2010.  SA-114.  The State's belated

and meager apparent efforts to contact its own contractor, CCA, consisted only of "numerous phone calls" – more than six months after Diamondback closed. *Id*. There is no evidence on the record that the State ever issued any subpoenas to CCA for documents or witnesses.

On December 7, 2010, the district court held a status conference and asked the State how it would like to proceed. A-31. At that status conference, the State did not request additional discovery or alert the district court to any difficulties it was having obtaining relevant evidence, nor did the State take any other steps to "develop the record" on timeliness; instead, the State chose to file a motion to dismiss Mr. Ray's petition as untimely, ignoring this Court's directive to "develop the record" and relying on the exact same record and arguments that this Court had found unpersuasive on appeal. *Id*. The State filed its motion to dismiss on December 21, 2010. *Id*. After extensive briefing by the State and Mr. Ray – the district court denied the State's motion to dismiss and Mr. Ray's motion for summary judgment in an order dated April 22, 2011. A-32, A-70-A-71. In that order, the district court also held that "Ray carries the burden of proving that the mailbox rule exception to the statute of limitations defense applies." A-68. As a result, the court also held that an evidentiary hearing was required at which Mr. Ray was directed to testify – and one was held on July 28, 2011. A-68, A-70 – A-71.

## III.   Evidence at Hearing

Mr. Ray's sworn affidavit filed on January 14, 2011, detailed the fact that on April 27, 2004, Ray placed his post conviction motion pursuant to Wis. Stat. § 974.06 with prepaid postage in the hands of Ms. Tamara Smith, a Diamondback Correctional Facility social worker, for mailing to the Wisconsin Circuit Court of Milwaukee County and was provided with two receipts:   a "CCA Privileged Correspondence Receipt" which was signed by Ms. Smith, and "Certificate of Service by Mail," which was signed by Ray. SA-129 – SA-131, SA-133.

The affidavit also described Mr. Ray's efforts to follow up on his petition, after he was repeatedly transferred to other prisons in Wisconsin. SA-129. On June 1, 2004 and September 9, 2004, he wrote letters to Ms. Smith from Wisconsin prisons requesting verification that his petition had been sent. SA-129, SA-134 – SA-137. After being transferred to Columbia Correctional Institution in Portage, Wisconsin on May 26, 2005, Ray wrote a third letter to Ms. Smith, on June 15, 2005, requesting verification that his motion had been sent. SA-129 – SA-130, SA-139. Ray was transferred to the New Lisbon Correctional Institution, located in New Lisbon, Wisconsin on February 21, 2006. SA-130. After not hearing back from Ms. Smith, Ray sent a notarized letter to the clerk of the court on October 4, 2006, requesting information on the status of his post conviction motion. Much to his surprise, Mr. Ray was informed for the first time that there was no record of his post conviction motion being filed with the court – and Ray filed a supplemental pro se post conviction motion in the circuit court of Milwaukee County on October 4, 2006, which was denied on the merits on October 16, 2006. SA-130, SA-203 – SA-204.

At the evidentiary hearing, the district court considered additional arguments about its ruling on burden, and noted that "there is no doubt Mr. Ray has made the required presentation of sufficient evidence to – for me to conclude that he has raised the [mailbox rule] issue." SA-010. But the court noted that an evidentiary hearing was necessary because the State "inferentially" disputed Mr. Ray's affidavit. SA-010. The State's inferential dispute, however, was not based on any new evidence in the record, and further demonstrated that the State had failed to heed this Court's directive to "develop the record" on remand. A-53, SA-010. The court admitted the State's initial challenge to timeliness was "not based on specific facts" - but contemplated that whether the State could provide any affirmative proof "would be part of the

argument" at the evidentiary hearing." SA-010 – SA-014. The district court also insisted on hearing directly from Mr. Ray, even though Mr. Ray had satisfied his obligations by filing his affidavit. SA-010.

Notwithstanding this Court's directive that the government should "develop the record" on timeliness, the district court placed the burden of proof on the Petitioner. Thereafter the court proceeded with the evidentiary hearing and petitioner presented testimony from three witnesses, including Mr. Ray, and submitted twenty exhibits – all of which were consistent with Mr. Ray's sworn affidavit. Mr. Ray confirmed that everything in his affidavit was true, and explained that he handed his pro se 974.06 petition with prepaid postage to a Diamondback social worker, Ms. Tamara Smith, to mail on April 27, 2004, because he "was on administrative confinement to the unit," and could not access Diamondback's mail system. SA-056 – SA-059. Mr. Ray explained that all Wisconsin prisoners were on confinement because they were about to be moved back to Wisconsin from Oklahoma. *Id.* The State presented no evidence about administrative confinement procedures or policies at Diamondback.[2]

Mr. Ray testified in detail about his interaction with Ms. Smith. He explained that if anyone confined to the unit wanted to mail something "[y]ou either give to the CO or you give it to the social worker or another staff member that came into the unit during lunch." SA-056. Ms. Smith came into the unit on April 27, 2004, while Mr. Ray was eating lunch. Mr. Ray "stopped eating and went upstairs" to his cell and grabbed "the manila envelope with his §974.06 in it and brought it downstairs and waited on the side until she got done talking to a few inmates." *Id.*

---

[2] Indeed, it is acknowledged penal procedure that to ensure security, prisoners do not know specifically when they are being moved. Further, the Oklahoma Department of Corrections ("DOC") has a clear security policy which applies to all DOC staff and private prison staff - which states that "[a]ll staff, including volunteers and contract workers, are prohibited from notifying any offender of the date, time, method, route or destination of any transport." Oklahoma DOC Security Policy OP-040111, available at http://www.doc.state.ok.us/offtech/op040111.pdf

After explaining that he needed her to send some legal mail for him – Ms. Smith "asked the officers to open the social worker office for her and we went in and she started going through the cabinet – the cabinet desk drawers and she came across one form and she told me to start filling it out." SA-057. Mr. Ray certified that the form he filled out was a certificate of service by mail ("Certificate of Service"), a copy of which was included with his original federal habeas petition and was re-submitted at the evidentiary hearing. SA-57, SA-129, SA-133.

Mr. Ray also testified that while the Certificate of Service did not have any markings identifying it as a CCA or Diamondback form, there were other prison forms that also lacked such identification. SA-057 – SA-058. Ray authenticated one such form, a TLU Property Request Form ("TLU") from New Lisbon Prison, which was printed on plain white paper and had no letterhead or markings to identify it as an official prison form. SA-180, SA-058. In addition, the TLU form was rife with typographical errors – with all but one sentence containing an error. SA-180. The State presented no evidence about the Certificate of Service.

Mr. Ray also testified about a second receipt ("CCA Receipt") that he received from Ms. Smith along with the Certificate of Service. SA-057. Mr. Ray testified that he was unable to include the CCA Receipt in his federal habeas petition because he did not have it in his possession when he filed his pro se petition with the district court. SA-065. He explained that he lost the CCA Receipt when an inmate who was helping him draft his federal habeas petition was unexpectedly transferred to another prison and took it with him. SA-088. After this Court issued its decision in January 2010, Mr. Ray tracked down the inmate who had the CCA receipt, and submitted the receipt to be copied by the New Lisbon Correctional library staff so that it could be provided to the district court. SA-068.

After the receipt was copied, however, the copies and the original were lost by the prison. SA-069 – SA-078.  New Lisbon launched an investigation, and concluded that the copies were lost in the prison mail.  SA-146 – SA-163.  Two officials from New Lisbon Correctional Facility, Officer Nedbal and Ms. Martin, the librarian, testified that the copies were made, that they followed New Lisbon's screening and review policies, and that there was nothing suspicious about the materials Mr. Ray submitted.  SA-015 – SA-058.  Ms. Martin confirmed that after the copies were lost, a full investigation was launched – which concluded that Mr. Ray's copies were lost in the mail.  SA-038 – SA-041, SA-045 – SA-046.  Ms. Martin also testified that no one had suggested that Mr. Ray had simply claimed that the copies were lost, when they had actually been delivered to him.  SA-045 – SA-046.  The State questioned whether Mr. Ray was lying about the copies – but did not present any witnesses or evidence in support of its queries.  SA-030, SA-043.

Mr. Ray also testified about and authenticated the letters he wrote to Diamondback inquiring about his §974.06 petition and the letter he wrote to the Milwaukee County Court inquiring about his petition.  SA-064 – SA-078.  Ray explained that he initially wrote to Ms. Tamara Smith, the Diamondback social worker to whom he gave his petition, because the transfer to Wisconsin resulted in a "lot of chaos going on" and that a number of inmates had problems with their legal materials.  SA-065.  Mr. Ray also explained that because he was pro se he relied on other inmates to help put together his §974.06 petition, and those prisoners had advised him not to "irritate the court" and risk having his petition dismissed.  SA-065 – SA-066. As a result, Mr. Ray focused his attention on writing Ms. Smith to inquire about his petition. Because Mr. Ray was pro se and now incarcerated back in Wisconsin, the only way he could contact Ms. Smith was writing her.  After writing three letters to Ms. Smith and not receiving

any responses from Diamondback,  Mr. Ray sent a notarized letter to the Milwaukee County Court to inquire about his §974.06 petition, and found out for the first time that the court had not received his petition.  SA-066.  Mr. Ray promptly submitted another petition, and again wrote Ms. Smith and the Warden at Diamondback to ask about his previous petition.  SA-068 – SA-069, SA-095 – SA-098.

Mr. Ray explained that he submitted the only copies of the letters to Ms. Smith that he had – and he also documented why the letters to Ms. Smith could not have been notarized per Wisconsin Department of Corrections Policy and why the letters were not kept in his prison file. SA-066 – SA-067, SA-093, SA-097 – SA-098, SA-103 – SA-104.  The State questioned whether Mr. Ray could have sent the letters to Diamondback because there was no record of him buying stamps before the letters were sent.  Two-thirds of the evidence presented by the State at the hearing focused on whether Mr. Ray purchased stamps before the letters were sent.  SA-050 – SA-052, SA-182 – SA-184.  The State's sole witness, Ms. Michelle Highley, testified about Mr. Ray's trust account balances at Green Bay Correctional, and confirmed that Mr. Ray did not make "any purchases until June 14th" which was after the first letter was sent to Ms. Smith.  SA-051.  Ms. Highley acknowledged, however, that there were many other ways for a prisoner like Mr. Ray to have stamps to mail letters, including hanging on to stamps that were previously purchased, borrowing stamps from other inmates, and having family members send in envelopes with prepaid postage.  SA-052 – SA-053.

The third and final piece of evidence that the State presented at the hearing was a communication, mail and visiting policy for Diamondback Correctional Institution.  SA-185 – SA-195.  The policy described what types of correspondence would be considered privileged, and how the legal mail system at Diamondback normally worked.  SA-081 – SA-082, SA-105 –

SA-107.  The State did not present any witnesses to explain the policy.  SA-112 – SA-113.

Moreover, the policy did not address what procedures would apply when prisoners were

administratively confined as Mr. Ray had been on the date in question.  SA-185 – SA-195.  The

State also failed to submit any documentary evidence or witnesses to testify about the policies

and procedures governing legal mail when prisoners were administratively confined. SA-112 –

SA-113. Finally, the State did not produce Ms. Tamara Smith or any other Diamondback

employee and made virtually no effort either to locate her or to locate any relevant Diamondback

documents from its CCA contractor.

## STANDARD OF REVIEW

When reviewing a district court's denial of a 28 U.S.C. § 2254(d) petition for habeas

relief, "the district court's findings of fact [are reviewed] for clear error and its rulings on issues

of law [are reviewed] *de novo*."  *Bintz v. Bertrand*, 403 F.3d 859, 865 (7th Cir. 2005) (quoting

*Denny v. Gudmanson*, 252 F.3d 896, 900 (7th Cir. 2001); *see also Cross v. Hardy*, 632 F.3d 356,

360 (7th Cir. 2011)("In an appeal from a ruling on a petition for habeas relief, we review the

district court's findings of fact for clear error and its rulings on issues of law *de novo*.").  A

factual finding is clearly erroneous "when, although there is evidence to support it, the reviewing

court is left with the definite and firm conviction that a mistake has been made."  *U.S. v.

Marshall*, 157 F.3d 477, 480-81 (7th Cir. 1998) (internal citations omitted).

## SUMMARY OF ARGUMENT

The district court admitted that Ray met his initial burden of demonstrating that his §

974.06 filing was timely delivered to prison officials under the prison mailbox rule – by

presenting a sworn declaration that complied with the requirements of Fed. R. App. P. 4(c)(1).

A-15.  Consistent with the directive from this Court that on remand "the government may have

an opportunity to develop the record," the district court's opinion stated that "once the prisoner presents such evidence, as Ray has here, the burden does shift to the respondent to refute it." A-15, A-53.

However, less than a paragraph later the court reversed itself and ignored the directive from this Court and its own statement that the State bore the burden, and shifted the burden back to Mr. Ray. The court explained that while the State could have provided witnesses from Diamondback and CCA, its failure to present such evidence was excused – because Mr. Ray was now represented by pro bono counsel and was no longer pro se. A-15. Having shifted the burden back on Mr. Ray, the district court proceeded to deny Mr. Ray's petition as untimely. A-10. The district court's decision to place the burden on Mr. Ray because he was no longer pro se is a position unsupported by any precedent – and completely contrary to law, logic and the policies underlying the prison mailbox rule.

Mr. Ray, like virtually all prisoners, was pro se at the time he filed his Petition. The prison mailbox rule was originally adopted by the Supreme Court in recognition of the unique vulnerability of "prisoners seeking to appeal without the aid of counsel." *Houston v. Lack*, 487 U.S. 266, 270 (1988). Because "*pro se* prisoners have no control over delays" by prison officials, prisoner filings are deemed timely so long as they are given to prison officials for mailing before the applicable deadline. *Id*. at 273. Indeed, this Court and numerous other circuits have explicitly adopted the reasoning of *Houston* finding that because "prisoners filing *pro se* do not have the same access to the court system as other litigants" applying the mailbox rule to "prisoners filing *pro se* habeas petitions" is necessary "in order for justice to be properly served." *Jones v. Bertrand*, 171 F.3d 499, 502 (7th Cir. 1999); *see e.g., Anthony v. Cambra*, 236 F.3d 568, 575 (9th Cir. 2000) ("[M]ailbox rule applies with equal force to the filing of state as

well as federal petitions" for purposes of AEDPA's statute of limitations because "at both times, the conditions that led to the adoption of the mailbox rule are present; the prisoner is powerless and unable to control the time of delivery of documents to the court.") (citation omitted); *Campbell v. Henry*, 614 F.3d 1056, 1059 (9th Cir. 2010) (holding same); *Fernandez v. Artuz*, 402 F.3d 111, 113-15 (2d Cir. 2005) (Applying the reasoning of *Houston* to hold that a pro se petitioner's state post-conviction motion was timely under the mailbox rule, and therefore his federal habeas petition was timely.).

In applying the mailbox rule, courts have looked to the reasoning of *Houston* and the language of Fed. R. App. P. 4(c)(1) which further codified the rule.  Indeed, the logic of *Houston* and the language of Fed. R. App. P. 4(c)(1) make it clear that once a prisoner makes an initial showing that he is entitled to application of the mailbox rule - the concerns of the mailbox rule rightfully place the burden of proof on the State because if there is a delay because of action or inaction by the prison authorities, a prisoner "is unlikely to have any means of proving it." *Houston*, 487 U.S. at 271.  Therefore the burden of proof logically falls to "the prison" which "will be the only party with access to at least some of the evidence needed to resolve such questions." *Houston,* 487 U.S. at 276.  In this case the State was in the best position (indeed, the only position) to obtain documents and subpoena witnesses from Diamondback and CCA, two entities with which it had a long-standing contractual relationship, and to which Wisconsin chose to delegate its penal responsibilities.

Most significantly, the State could have produced its contractor employee, Ms. Tamara Smith, to either support or refute Mr. Ray's unequivocal testimony in his affidavit (and at the hearing) that he delivered his petition to Ms. Smith at Diamondback on April 27, 2004.  Moreover, as the district court admitted, witnesses from Diamondback or CCA could have

testified about the policies and procedures in place at Diamondback in April 2004, what forms may have been used for inmate legal mail, whether the Certificate of Service in the record was a form used by CCA generally or Diamondback specifically, and, most importantly, whether anyone remembers receiving Mr. Ray's § 974.06 petition.

But the record shows that the State did not call any of these witnesses or present any evidence at all, instead the State simply argued that Mr. Ray's sworn affidavit and testimony were not credible because they were self-serving. The State did so despite this Court's repeated warnings against the practice of simply denigrating an opponents evidence by claiming that it was self-serving. *See  Ryan v. U.S.*, 657 F.3d 604, 607 (7th Cir. 2011) ("[W]e advise against using one label repeatedly deployed in the government's brief, "self-serving," to describe an opponent's sworn testimony. Important testimony of a party is usually self-serving by its nature.").

The district court in turn, accepted the State's position and excused the State's failure to "develop the record" and present any actual evidence in support of its burden. Indeed, despite having nearly two years to "to develop the record and raise affirmative defenses" - the State has failed to further develop the record in support of its timeliness argument. *Jardine v. Dittman*, 658 F.3d 772, 775 (7th Cir. 2011).

In the end, even the district court admitted that the State did not provide any specific direct evidence to contradict Mr. Ray's affidavit. Indeed, all the State did was suggest one outlandish theory after another, none of which were supported by evidence in the record. And so, even though the district court had claimed that the State had the burden of proof – in actuality, the court improperly shifted the burden back to Mr. Ray because he was now represented and assumed a number of key facts that were not based on evidence in the record.

The result was a decision unsupported by precedent or the record. This subversion of the mailbox rule and the burden of proof is all the more egregious here where this Court has already reached the underlying substantive merits and concluded that Mr. Ray's Constitutional rights at trial were violated. As such, the district court decision should be reversed, and Mr. Ray's habeas petition should be deemed timely and be granted.

## ARGUMENT

### I.    Ray's Affidavit Shifted the Burden of Proof to the State

The district court admitted that "once a prisoner presents such evidence as Ray has here, the burden does shift to the respondent to refute it." A-15. The court was referring to Mr. Ray's sworn affidavit, which met the clear requirements of Fed. R. App. P. 4(c)(1), by explaining that Mr. Ray delivered his § 974.06 petition with prepaid postage to Ms. Tamara Smith, a social worker at Diamondback Correctional Facility ("Diamondback"). SA-129 – SA-131. Mr. Ray also explained in his affidavit and testimony that he was unable to access the normal mail system at Diamondback, because Wisconsin prisoners were being returned to Wisconsin and were all being held in administrative confinement. SA-56.

Moreover, this Court has repeatedly recognized that a prisoner simply needs to meet the requirements of Fed. R. App. P. 4(c)(1) to obtain the benefit of the mailbox rule. *See Parker v. Evans*, 2009 WL 3634719, at \*\*2 (7th Cir. 2009) ("The information Parker provided is sufficient to satisfy the mailbox rule and allow for a timely appeal . . . We conclude that Parker abided by Rule 4(c)(1) and should receive its benefit, rendering this appeal timely."); *see also United States v. Craig*, 368 F.3d 738, 740 (7th Cir. 2004)("Today the mailbox rule depends on Rule 4(c)"). Indeed, this Court has noted that it  would be "an exceptional situation" where a "district court

would be entitled to hold a pro se prisoner to an actual receipt standard." *Edwards v. U.S.*, 266 F.3d 756, 758-59 (7th Cir. 2001).

Furthermore, numerous circuits have concluded that once a pro se petitioner files a sworn affidavit or declaration stating that he placed the appeal in the hands of prison officials with prepaid postage, "such a declaration shifts to the opposing party the burden of producing evidence in support of a contrary factual finding." *Caldwell v. Amend*, 30 F.3d 1199, 1203 (9th Cir. 1994); *see also Allen v. Culliver*, 471 F.3d 1196, 1198 (11th Cir. 2006) ("With respect to any such inquiry on remand, we construe both *Houston* and Fed.R.App.P. 4(c) to imply that the burden of proof should be placed upon the state if Allen has satisfied the requirement of Fed.R.App.P. 4(c)(1).").

Moreover, requiring the State to produce evidence in support of a contrary factual finding is consistent with this Court's holding that "the period of limitations is an affirmative defense" and "the state has the burden of showing that the petition is untimely." *Gildon v. Bowen*, 384 F.3d 883, 886 (7th Cir. 2004); *see also Day v. McDonough*, 547 U.S. 198, 208 (2006) ("the statute of limitations is akin to other affirmative defenses to habeas petitions").

## II.    District Court Blindly Excused the State's Evidentiary Failure

Despite acknowledging that Mr. Ray's affidavit met the requirements of Fed. R. App. P. 4(c)(1), the district court's decision explicitly excused the State's failure to admit any evidence refuting Mr. Ray's affidavit and testimony.  While the court acknowledged that the state failed "to obtain and introduce into evidence a copy of the mail log from Diamondback" without explanation it claimed that somehow the log would "tell us nothing."  A-15.  The court then acknowledged that "[i]t certainly would have been helpful to have Ms. Smith testify about what, if anything she recalls."  *Id*.  Indeed, what would have been most helpful would have been if Ms. Smith "or some[one] else from Diamondback could have explained the procedure and forms

used for outgoing legal mail…"  *Id*.  But "[i]n the absence of a log for the legal mailbox or *equivalent testimony*. . . it is not evident from the record" that the State met its burden. *Caldwell v. Amend*, 30 F.3d 1199, 1203 (9th Cir. 1994).  Yet notwithstanding the district court's understanding of the significance and import of Ms. Smith's testimony, it excused the State from its utter failure to meet its burden and to produce its contractor's employee.

After identifying in detail all of the information that a Diamondback or other CCA official could have provided, the district court simply accepted the State's claim that it "was unable to obtain such information or locate such a witness." A-15.  In doing so, the district court ignored the fact that the State did not even begin the process of trying to develop the record until a few months before the evidentiary hearing, nearly eighteen months after the State had first raised timeliness as an affirmative defense in its brief to this Court on July 27, 2009. A-40. Indeed, it is now obvious that when the State raised timeliness on July 27, 2009, it had no factual basis whatsoever to dispute Mr. Ray's affidavit, and it had failed to make any inquiries of any kind concerning the circumstances of Mr. Ray's filing before it raised that affirmative defense to this Court.  By its own representations, the State's actions to develop the record were limited to "numerous phone calls to CCA." begun more than a year after this Court's decision.  SA-114. Indeed, the State failed to issue a single subpoena to anyone at CCA for documents or witness testimony – and there is no evidence on the record to suggest that the State even considered such action.

## III.    State's Burden of Proof Does Not Depend on Whether a Prisoner Has Pro-Bono Counsel

After acknowledging the State's failure to produce any affirmative evidence, the district court claimed that "[i]f Ray was still pro se, Respondent's failure to produce such evidence might be viewed differently, but Ray has been represented by a reputable Chicago law firm since

December 4, 2008." A-15. The court's position is not only completely without precedent – but it completely flies in the face of the reasons for the mailbox rule. In essence, the district court's argument is that the issue of who bears the burden of proof depends on whether a prisoner is pro se or has representation at the time of the hearing. If the prisoner remains unrepresented, as most are, the State retains the burden of proof. Yet, if a prisoner is unlucky enough to have pro-bono counsel – then according to the district court - the State can simply ignore its burden of proof and shift the burden back to the prisoner. Such a "rule" is not founded in law, logic or fairness - and is contrary to this Court's directive to the district court to conduct a hearing "so that the government may have an opportunity to develop the record on this issue," a directive that was issued by this Court knowing full well that Petitioner was now represented "by a reputable Chicago law firm." A-53, A-15. Whether pro se or represented by pro bono counsel, it is the State that is in the position to produce evidence regarding the mailing issues at hand; the prisoner through his affidavit can state what occurred, but only the State can investigate the circumstances and facts as they exist at the State's own institution.

The district court's paradigm is especially troubling here, where this Court has already found that Mr. Ray's conviction was based on a fundamental constitutional violation. Allowing the State to avoid meeting its burden of proof – because Mr. Ray was now represented by pro-bono counsel – would wrongfully punish Mr. Ray for not doing the State's job. Moreover, the policy implications would be clear – the protection of the mailbox rule would be completely eliminated in instances where a petition was lost by the State. Indeed, the State would have every incentive to not seek out evidence or present witnesses – and instead simply question the veracity or reliability of a prisoner's affidavit – without having to produce any evidence in support of its assertions.

**IV.    The State Was In The Best Position To Gather Evidence From CCA**

The district court suggests that the evidence from CCA "should have been equally available to Ray's attorney."  A-15.  That is simply not correct.  It is the State which has unique access to its (or its contractor's) employees, its documents, its records and its policies.

Moreover, the district court presumably would agree that the overwhelming majority of pro se habeas applicants do not obtain pro bono counsel and that  evidence from the prison system is certainly not "equally available" to them.  In effect, the district court has set up an unprecedented, unworkable and unfair two-tiered system:  for that vast majority of pro se applicants, the burden of proof remains with the State; but for those few who have pro bono or retained counsel, they assume the burden of proof as the price of securing representation.  That simply is not – nor should not – be the law.

The district court's position also ignores the Supreme Court's reasoning in *Houston* – which this Court has adopted in applying the mailbox rule in a wide range of cases.  The Supreme Court's logic in *Houston* suggested that the burden of proof be placed on the prison and not the pro se prisoner simply because "a prison can readily dispute a prisoner's assertions that he delivered a paper on a different date" and unlike the pro se prisoner – "the prison will be the only party with access to at least some of the evidence needed to resolve such questions." *Houston v. Lack,* 487 U.S. 266, 275-76 (1988).  Moreover, when the prison is accused of losing a pro se prisoner's appeal – this Court has found the logic of *Houston* to be particularly instructive in holding that the prison should bear the burden of proof.  *Dole v. Chandler*, 438 F.3d 804, 813 (7th Cir. 2006) ("We believe that the potential for fraud does not justify obligating truthful prisoners to prove that they mailed their complaints when the prison authorities do not provide them with means for verification.").

Moreover, the district court failed to consider CCA's "long-standing [contractual] relationship with the state of Wisconsin."[3]  Indeed, it is completely unreasonable to claim that Mr. Ray was in a better position to obtain information about Diamondback and CCA's policies or interview CCA staff and identify other potential witnesses – when the State was the party that hired and managed CCA.  The State's longstanding contractual relationship with CCA meant that it was the State that would have had the access to CCA records, and the State was the party that was in a contractual position to approach its contracting partner and require it to produce relevant evidence.

Indeed, the State had an extraordinary amount of time to gather evidence from CCA in support of its theory that Mr. Ray's petition was untimely.  The record shows that while "Diamondback closed in late May" 2010, this Court issued its initial decision on January 21, 2010.[4]  The State initially asserted that Mr. Ray's Petition was untimely on July 27, 2009.  Even if the State can somehow be excused from not seeking evidence before asserting that Mr. Ray's petition was untimely on that date, the State had over five months after this Court found that Mr. Ray's constitutional rights had been violated to contact CCA while Diamondback was still open to seek records and interview personnel.  Even this Court's amended opinion was issued over two months before Diamondback closed.  The State had months to gather information, interview staff, obtain affidavits and other documents directly from Diamondback to develop the record regarding its unsupported affirmative defense that Mr. Ray's petition was untimely.  Even after Diamondback was shut down – CCA was still in business.  The State could have easily contacted

---

[3] *CCA to consolidate operations at two Oklahoma facilities*, Nashville Business Journal, June 13, 2003, available at http://www.bizjournals.com/nashville/stories/2003/06/09/daily38.html

[4] Bryan Painter, *Watonga faced adjustments with prison's closure*, The Oklahoman, June 6, 2010, available at http://newsok.com/article/3466629

CCA – even after Diamondback was idled – to gather information on the forms that CCA used and the policies and procedures that were followed.  Moreover, the State could have shared Mr. Ray's receipt and affidavit with CCA officials.  Indeed, testimony from CCA officials about the veracity of the receipts in the record and Mr. Ray's explanation of why he had to turn over his 974.06 motion to his social worker – could have been dispositive.

But the State admitted that it made no effort to contact anyone at CCA until a few months before the July 2011 evidentiary hearing.  SA-114.  And while this Court has explained that when a habeas case is remanded on timeliness, the warden will need time "to develop the record and raise affirmative defenses" – the State's delay in this case cannot excuse its lack of evidence. *Jardine v. Dittman*, 658 F.3d 772, 775 (7th Cir. 2011).  The State admitted that its efforts to develop the record were limited to "numerous phone calls to CCA."  SA-114.  And while the State claims that it did everything it could to "get more information from CCA on what their policies were" - it failed to issue a single subpoena to anyone at CCA for documents or witness testimony – and there is no evidence on the record to suggest that the State even considered such action. SA-114.

## V.  The Limited Evidence Presented By the State Failed to Rebut Mr. Ray's Affidavit

The State only presented a total of three pieces of evidence at the hearing.  Two-thirds of the evidence presented by the State - focused on whether Mr. Ray purchased stamps at Green Bay Correctional Institution before he sent letters to Ms. Smith inquiring about his pro se § 974.06 petition.  SA-050 – SA-052, SA-182 – SA-184[Transcript p.50-52, and Cite to Exhibit 1000].  The State's sole witness – Ms. Michelle Highley – testified about Mr. Ray's trust account balances at Green Bay Correctional – and confirmed that Mr. Ray did not make "any purchases until June 14th" which was after the first letter was sent to Ms. Smith.  SA-051.  But on cross-examination Ms. Highley admitted, that there were many other ways for a prisoner like Mr. Ray

to have stamps to mail letters – including hanging on to stamps that were previously purchased, borrowing stamps from other inmates, and having family members send in envelopes with prepaid postage.  SA-052 – SA-053.

The third and final piece of evidence that the State presented was a communication, mail and visiting policy for Diamondback Correctional Institution.  SA-185 – SA-195.  The policy describes what types of correspondence would be considered privileged, and how the legal mail system at Diamondback normally worked.  SA-081 – SA-082, SA-105 – SA-107.  The State did not present any witnesses to explain the policy – and the policy itself does not address what procedures would apply when prisoners were administratively confined, as Mr. Ray was on the date in question.  SA-112 – SA-113, SA-185 – SA-195.  As a result, there is no evidence in the record contesting Mr. Ray's affidavit and testimony that he was in administrative confinement when he provided his 974.06 petition with prepaid postage to his social worker to mail.

## VI.    Claiming that Evidence is Self Serving Is Not Enough

Finally, the State and the district court repeatedly suggested that the evidence provided by Mr. Ray was somehow illegitimate because it was based only on his personal knowledge, or only contained his signature.  For example, the district court seemed to accept the State's totally unsupported challenges to the  veracity of the Certificate of Service form and Mr. Ray's letters to Ms. Smith – even though the State presented no evidence to refute Mr. Ray's evidence.

But this Court has repeatedly found that such claims do not qualify as evidence – and rightfully warned against relying on such an approach in a wide range of contexts including habeas corpus petitions.  *See  Ryan v. U.S.*, 657 F.3d 604, 607 n1 (7th Cir. 2011) ("[W]e advise against using one label repeatedly deployed in the government's brief, "self-serving," to describe an opponent's sworn testimony. Important testimony of a party is usually self-serving by its nature."); *see also Wilson v. McRae's Inc.*, 413 F.3d 692, 694 (7th Cir. 2005) ("The deficiency is

23

not, as the district judge stated, that Wilson's evidence is 'self-serving.' Most affidavits are self-serving, as is most testimony, and this does not permit a district judge to denigrate a plaintiff's evidence.").[5]

Indeed, the record shows that district court even adopted some of the State's unsupported factual claims. For example, the district court claimed that Mr. Ray "knew he was on his way back to Wisconsin in a matter of days" and relied on this fact to question whether Mr. Ray provided his §974.06 motion to Ms. Smith. A-16. This statement, however, was just an assertion by the State during its closing argument – and there is no evidence on the record that Mr. Ray knew when he was being transferred. SA-118. In fact, it is widely known that prisoners are not told when they are being transferred because of security concerns. *See* Oklahoma DOC Security Policy OP-040111.

## CONCLUSION

In the end, the same conclusion that was true on January 21, 2010, remains true today – there is no evidence on the record to support the State's position. And despite having years to further develop the record – the State has done nothing but delay and claim that Mr. Ray's sworn statements and documentary evidence are self-serving. But such claims by the State are not evidence – they are simply assertions – completely unsupported by any documentary evidence or testimony. Indeed, when presented by evidence and testimony by Mr. Ray, all the State did was suggest one outlandish theory after another – none of which were supported by evidence in the record.

---

[5] It is indeed disingenuous and somewhat ironic that the State castigates Mr. Ray for making a self-serving declaration when the very need for that declaration was brought about by the State's abuse of Mr. Ray's Sixth Amendment rights as already found by this Court.

Moreover, after admitting that the State could have provided helpful testimony from Diamondback and CCA officials, the district court excused the State's "failure to produce such evidence" based on the fact that Ray was no longer "pro se." A-15.  The district court ignored this Court's directive that "the government . . . develop the record."  A-53.  The district court decision improperly shifted the burden of proof to Mr. Ray and created an unprecedented and unsupported rule which retains the burden on the State for the overwhelming majority of unrepresented habeas applicants, but shifts the burden to those few represented petitioners.  That the district court did so in the rare case where this Court had already found a substantive Constitutional violation requiring grant of the Petition if timely filed, is all the more troubling.

For the forgoing reasons, Mr. Ray respectfully requests that this Court reverse the district court's order and grant Mr. Ray's habeas petition.

Respectfully submitted:


/s/ Jeetander Dulani
Jeetander T. Dulani
Thomas C. Hill
PILLSBURY WINTHROP SHAW PITTMAN LLP
2300 N Street N.W.
Washington, D. C. 20037-1122
(202 ) 663-5000

*Attorneys for Petitioner-Appellant*
*Elliot D. Ray*

Dated:  December 9, 2011

**CERTIFICATE OF COMPLIANCE WITH FED. R. APP. P. 32(a)(7)**

Pursuant to Fed. R. App. P. 32(a)(7)(C), I, Jeetander Dulani, an attorney, certify that I have complied with the above-referenced rule, and that according to the word processor used to prepare this brief, Microsoft Word, this brief contains 7685 words and therefore complies with the type-volume limitation of Rule 32(a)(7)(B).

Dated: December 9, 2011

                                              /s/ Jeetander Dulani
                                                Jeetander Dulani

## CERTIFICATE OF COMPLIANCE WITH CIRCUIT RULE 30(d)

I, Jeetander Dulani, an attorney, certify that all materials required by Circuit Rule 30(a) and (b) are included in the appendices.

Dated: December 9, 2011

_____/s/ Jeetander Dulani_____
Jeetander Dulani

**CERTIFICATE OF SERVICE**

I, Jeetander Dulani, an attorney, hereby certify that on December 9, 2011, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

Dated: December 9, 2011

/s Jeetander Dulani
Jeetander Dulani

# CIRCUIT RULE 30 APPENDIX

## TABLE OF CONTENTS

**Circuit Rule 30(a) Required Short Appendix**
**(attached to brief)** <u>**Page Range**</u>

U.S. Court of Appeals for the Seventh Circuit
Appeal No. 11-3228, Short Record on Appeal, dated September 30, 2011
Docket No. 1 ................................................................................................................... A-01

U.S. Court of Appeals for the Seventh Circuit
Appeal No. 08-2825, General Docket .................................................................. A-38

U.S. Court of Appeals for the Seventh Circuit
Appeal No. 08-2825, Amended Order and Opinion Denying Appellee's
Petition for Rehearing and Petition for Rehearing *en banc*, dated April 1, 2010
Docket Nos. 42-43 ....................................................................................... A-42

U.S. Court of Appeals for the Seventh Circuit
Appeal No. 08-2825, File order from the Supreme Court Denying Appellee's
Petition for Writ of Certiorari, dated November 17, 2010
Docket No. 47 ..................................................................................................... A-55

U.S. District Court, Eastern District of Wisconsin [Green Bay]
Case No. 07-C-190, Order Denying Dispositive Motions, dated April 22, 2011
Docket No. 56 ..................................................................................................... A-56

**Circuit Rule 30(b) Separate Appendix**                                    <u>Page Range</u>

U.S. District Court, Eastern District of Wisconsin [Green Bay]
Case No. 07-C-190, Evidentiary Hearing Transcript, Exhibit List, and
Admitted Exhibits
Dated July 28, 2011 .......................................................................................SA-001

Wisconsin Court of Appeals [District I]
Appeal No. 02-0791-CR, Judgment Affirming Milwaukee County
Circuit Court Decision
Filed January 28, 2003 ..................................................................................SA-196

Milwaukee County Circuit Court [Branch 8]
Case No. 00CF001684, Decision and Order Denying Motion
for Postconviction Relief
Filed October 16, 2006 ..................................................................................SA-203

U.S. District Court, Eastern District of Wisconsin [Green Bay]
Case No. 07-C-190, Petition for Writ of Habeas Corpus, filed February 28, 2007
Docket No. 1 ..................................................................................................SA-205

U.S. District Court, Eastern District of Wisconsin [Green Bay]
Case No. 07-C-190, Petition and Affidavit to Proceed Without Prepayment
Filed February 28, 2007
Docket No. 2 ..................................................................................................SA-217

U.S. District Court, Eastern District of Wisconsin [Green Bay]
Case No. 7-C-190, Petition for Protective Order Staying and Abeying Petitioner's
Petition for Writ of Habeas Corpus, filed February 28, 2007
Docket No. 3 ..................................................................................................SA-225

U.S. District Court, Eastern District of Wisconsin [Green Bay]
Case No. 7-C-190, Affidavit of Elliot Don Ray, filed February 28, 2007
Docket No. 4 ..................................................................................................SA-244

U.S. District Court, Eastern District of Wisconsin [Green Bay]
Case No. 7-C-190, Order Regarding Request to Proceed Without Prepayment
Filed March 27, 2007
Docket No. 5 ..................................................................................................SA-246

U.S. District Court, Eastern District of Wisconsin [Green Bay]
Case No. 7-C-190, Motion for Reconsideration, filed April 5, 2007
Docket No. 7 ..................................................................................................SA-248

**Circuit Rule 30(b) Separate Appendix (continued)**          <u>Page Range</u>

Wisconsin Court of Appeals [District I]
Appeal No. 2008AP145-W, Order Denying Writ of Habeas Corpus
Dated April 22, 2008.........................................................................................SA-254

U.S. District Court, Eastern District of Wisconsin [Green Bay]
Case No. 07-C-190, Order Regarding Exhaustion of Remedies
Filed June 9, 2008
Docket No. 10 ...............................................................................................SA-260

U.S. District Court, Eastern District of Wisconsin [Green Bay]
Case No. 07-C-190, Petitioner's Motion and Amended Habeas
Corpus Petition, filed June 24, 2008
Docket No. 11 ...............................................................................................SA-261

U.S. District Court, Eastern District of Wisconsin [Green Bay]
Case No. 07-C-190, Request for Certificate of Appealability w/ Attachments
Filed July 18, 2008
Docket Nos. 15-18 ........................................................................................SA-286

U.S. District Court, Eastern District of Wisconsin [Green Bay]
Case No. 07-C-190, Transmission of Notice of Appeal and Docket
Sheets to U.S. Court of Appeals for the Seventh Circuit, filed July 18, 2008
Docket No. 19 ...............................................................................................SA-300

U.S. District Court, Eastern District of Wisconsin [Green Bay]
Case No. 07-C-190, Order Granting Request for Certificate of Appealability
Filed July 18, 2008
Docket No. 20 ...............................................................................................SA-322

U.S. District Court, Eastern District of Wisconsin [Green Bay]
Case No. 07-C-190, Notice of Appeal, filed August 4, 2008
Docket No. 22 ...............................................................................................SA-324

U.S. District Court, Eastern District of Wisconsin [Green Bay]
Case No. 07-C-190, Circuit Rule 3(C) Docketing Statement, filed August 4, 2008
Docket No. 23 ...............................................................................................SA-325

U.S. District Court, Eastern District of Wisconsin [Green Bay]
Case No. 07-C-190, Request for Certificate of Appealability, filed August 4, 2008
Docket No. 24 ...............................................................................................SA-327

U.S. Court of Appeals for the Seventh Circuit
Appeal No. 08-2825, Record on Appeal
Filed October 2, 2008 ...................................................................................SA-329

No. 11-3228

# IN THE
# UNITED STATES COURT OF APPEALS
# FOR THE SEVENTH CIRCUIT

ELLIOT DON RAY,

*Petitioner-Appellant*,

v.

MARC CLEMENTS,

*Respondent-Appellee*.

Appeal from the United States District Court
for the Eastern District of Wisconsin
Case No. 1:07-cv-00190-WCG
The Honorable William C. Griesbach

## REQUIRED ATTACHED APPENDIX OF PETITIONER-APPELLANT
## ELLIOT DON RAY

Jeetander T. Dulani
Thomas C. Hill
PILLSBURY WINTHROP SHAW
PITTMAN LLP
2300 N Street N.W.
Washington, D. C. 20037-1122
(202 ) 663-5000

*Attorneys for Petitioner-Appellant*

ORAL ARGUMENT REQUESTED

# CIRCUIT RULE 30 APPENDIX

## TABLE OF CONTENTS

**Circuit Rule 30(a) Required Short Appendix**
**(attached to brief)** <u>**Page Range**</u>

U.S. Court of Appeals for the Seventh Circuit
Appeal No. 11-3228, Short Record on Appeal, dated September 30, 2011
Docket No. 1 ................................................................................................................ A-01

U.S. Court of Appeals for the Seventh Circuit
Appeal No. 08-2825, General Docket ................................................................. A-38

U.S. Court of Appeals for the Seventh Circuit
Appeal No. 08-2825, Amended Order and Opinion Denying Appellee's
Petition for Rehearing and Petition for Rehearing *en banc*, dated April 1, 2010
Docket Nos. 42-43 ...................................................................................................... A-42

U.S. Court of Appeals for the Seventh Circuit
Appeal No. 08-2825, File order from the Supreme Court Denying Appellee's
Petition for Writ of Certiorari, dated November 17, 2010
Docket No. 47 .............................................................................................................. A-55

U.S. District Court, Eastern District of Wisconsin [Green Bay]
Case No. 07-C-190, Order Denying Dispositive Motions, dated April 22, 2011
Docket No. 56 .............................................................................................................. A-56

SHORT RECORD

Appeal no. 11-3228

FILED 09/30/2011

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF WISCONSIN**

Elliot Don Ray,
          Plaintiff,    )

v.                 )          **Case Number 07-C-190**

William Pollard,
          Defendant,   )

## NOTICE OF APPEAL

Notice is hereby given that Elliot Don Ray (plaintiff) in the above named case,

hereby appeals to the United States Court of Appeals for the Seventh Circuit from an

order dismissing a motion for relief under 28 U.S.C. § 2254 entered in this action on the

23rd day of August, 2011.

/s/ Jeetander T. Dulani

Jeetander T. Dulani
Thomas C. Hill
PILLSBURY WINTHROP SHAW
PITTMAN LLP
2300 N St. N.W.
Washington, D.C. 20037

**Attorneys for Elliot Don Ray**

703248026v2

A-01

### SEVENTH CIRCUIT APPEAL INFORMATION SHEET

*Include names of all plaintiffs (petitioners) and defendants (respondents) who are parties to the appeal. Use a separate sheet if needed.*

District: **Eastern District of Wisconsin**          Docket No.: __07-C-190__
Division: **Green Bay**

| Petitioner | Short Caption | Respondent |
|---|---|---|
| **Elliot Don Ray** | **v.** | **William Pollard** |

**Current Counsel for Plaintiff (Petitioner):**          **Current Counsel for Defendant (Respondent):**
*(Use separate sheet for additional counsel)*

Name: *Jeetander Dulani, Thomas HIll*          Name: *Aaron O'Neil, Katherine Desmond Lloyd*

Firm: *Pillsbury Winthrop Shaw Pittman LLP*          Firm: *WI DOJ - Office of the Attorney General*

Address: *2300 N St NW*          Address: *17 W Main St, PO Box 7857*

*Washington, DC 20037*          *Madison, WI 53707-7857*

Phone: *202-663-8383*          Phone: *608-266-1740*

Judge: __William C Griesbach__          Nature of Suit Code: __530__
Court Reporter: __Proceedings Digitally Recorded__          Date Filed in District Court: __02/28/2007__
          Date of Judgment: __08/24/2011__
          Date of Notice of Appeal: __09/20/2011__

Counsel:     ☒ *Appointed*     ☐ *Retained*     ☐ *Pro Se*

Fee Status:     ☒ *Paid*     ☐ *Due*     ☐ *IFP*     ☐ *IFP Pending*     ☐ *U.S.*     ☐ *Waived*
*(Please mark only 1 item above)*

Has docketing statement been filed with the District Court Clerk's Office: ☒ *Yes*     ☐ *No*

If 28 U.S.C. § 2254 or 28 U.S.C. § 2255, was certificate of appealability: ☐ *granted* ☐ *denied* ☒ *pending*

If certificate of appealability was granted or denied, what is the date of the order: _____

**IMPORTANT: THIS FORM IS TO ACCOMPANY THE SHORT RECORD SENT TO THE CLERK OF THE U.S. COURT OF APPEALS PURSUANT TO CIRCUIT RULE 3(a).**

No. __-____

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE SEVENTH CIRCUIT

| | | |
|---|---|---|
| ELLIOT DON RAY, | ) | |
| | ) | |
| | ) | On Appeal from the United States District |
| Plaintiff-Appellant, | ) | Court for the Eastern District of Wisconsin |
| | ) | |
| v. | ) | Case No. 07-C-190 |
| | ) | |
| WILLIAM POLLARD, | ) | Hon. William C. Griesbach |
| | ) | |
| Defendant-Appellee. | ) | |
| | ) | |

## PLAINTIFF-APPELLANT'S DOCKETING STATEMENT

Plaintiff-appellant Elliot Don Ray ("Mr. Ray") respectfully submits this docketing statement pursuant to Circuit Rules 3(c)(1) and 28(a). Mr. Ray is currently housed at Waupun Correctional Institution in Waupun, Wisconsin. Mr. William Pollard is currently the Warden at Waupun Correctional Institution.

### I. Jurisdictional Statement

1.     Plaintiff's claims in this action arise under 28 U.S.C. § 2254. This appeal is taken from an opinion and final judgment entered on August 23, 2011 (the "August 23 Order") by the United States District Court for the Eastern District of Wisconsin (District

Court for the Eastern District of Wisconsin Docket No. 67), dismissing Mr. Ray's motion for relief under 28 U.S.C. § 2254.

2.    Plaintiff-appellant filed a notice of appeal on September 20, 2011, within 30 days from entry of the August 23 Order dismissing Mr. Ray's motion for relief under 28 U.S.C. § 2254.

3.    The district court had jurisdiction over this matter pursuant to §§ 1331, 2241. This Court has jurisdiction over the appeal under 28 U.S.C. §§ 1291, 2254.

## II.  Related Appeals

4.    On July 18, 2008 Mr. Ray filed a notice of appeal (District Court for the Eastern District of Wisconsin Docket No. 14) from the district court's denial of his federal habeas petition pursuant to 28 U.S.C. § 2254. The district court granted Mr. Ray's request for a certificate of appealability on July 22, 2008 (District Court for the Eastern District of Wisconsin Docket No. 20), to address whether the trial court's admission of the statements of non-testifying co-actors through the testimony of a detective ran afoul of the confrontation clause. This appeal was captioned *Elliot Don Ray v. Ana Boatwright*, bearing appeal No. 08-2825.

5.    On January 21, 2010, the Seventh Circuit Court of Appeals held that Mr. Ray's Sixth Amendment right to confrontation was violated by the introduction of co-conspirator statements at trial through the testimony of a police detective, and that the violation substantially affected the fairness of the trial (Seventh Circuit Court of Appeals Docket No. 38).

6.    After an unsuccessful petition for review and *en banc* review, this Court issued an amended opinion on April 1, 2010 (Seventh Circuit Court of Appeals Docket No. 42), that affirmed the earlier panel decision and made clear that the violation of Mr. Ray's Sixth Amendment right to confrontation was not harmless because it "seriously affected the fairness of the judicial proceedings, [and] resulted in a decision that was contrary to clearly established federal law." (*Id.* at 10.)

7.    This Court remanded the case to the Eastern District of Wisconsin, so that the State could further develop the record to support its claim that Mr. Ray's petition was untimely pursuant to 28 U.S.C. § 2244(d). The State filed a petition for *certiorari* on June 30, 2010 (Seventh Circuit Court of Appeals Docket No. 46), which was denied on November 15, 2010 (Seventh Circuit Court of Appeals Docket No. 47). The district court held a status conference on December 7, 2010, and the State filed a motion to dismiss on December 21, 2010 (District Court for the Eastern District of Wisconsin Docket No. 44). Mr. Ray filed an opposition to the motion to dismiss and a motion for summary judgment on January 20, 2011 (District Court for the Eastern District of Wisconsin Docket Nos. 46-48), along with a *sur-reply* on February 21, 2011 (District Court for the Eastern District of Wisconsin Docket No. 55). In an April 22, 2011 order (District Court for the Eastern District of Wisconsin Docket No. 56), the district court denied the State's motion to dismiss and Mr. Ray's motion for summary judgment, held that the mailbox rule applied to Mr. Ray's claim, and ordered an evidentiary hearing to be held. An evidentiary hearing was held on July 28, 2011, and the district court denied Mr. Ray's habeas petition under 28 U.S.C. § 2254 on August 23, 2011 (District Court for the Eastern District of Wisconsin Docket No. 67).

Dated September 20, 2011

Respectfully submitted,

/s/ Jeetander T. Dulani

Jeetander T. Dulani
Thomas C. Hill
PILLSBURY WINTHROP SHAW
PITTMAN LLP
2300 N Street N.W.
Washington, D.C. 20037
202-663-8000 (Telephone)

**Counsel for Elliot Don Ray**

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

---

ELLIOT DON RAY,

        Petitioner,

    v.                                    Case No. 07-C-190

WILLIAM POLLARD,

        Respondent.[1]

---

## FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER DISMISSING MOTION FOR RELIEF UNDER 28 U.S.C. § 2254

---

Petitioner Elliot Don Ray is currently serving a state sentence for First Degree Reckless Homicide, two counts of Reckless Endangerment and Possession of a Firearm by a Felon. On February 28, 2007, Ray filed a petition for relief under 28 U.S.C. § 2254 in this Court. The case has a lengthy procedural history, including summary dismissal by this Court, reversal by the Court of Appeals, and an order for remand, all of which is set forth in the Court's April 22, 2011 Order and Decision Denying Dispositive Motions (Doc. 56) and will not be repeated here. The sole issue remaining is whether Ray's petition was timely under AEDPA's one-year limitation period. 28 U.S.C. § 2244(d). In its April 22 Decision, the Court concluded that an evidentiary hearing was needed to determine whether on April 27, 2004, Ray handed a motion for state post-conviction relief to a social worker at the private correctional facility where he was serving his sentence for mailing

---

[1] William Pollard has replaced Jim Schwochert as the Warden at Waupun Correctional Institution where Ray is presently serving his sentence.

to the Circuit Court for Milwaukee County. That hearing was held on July 28, 2011. What follows are the Court's findings of fact and conclusions of law.[2]

The Anti-terrorism and Effective Death Penalty Act (AEDPA) requires that applications for habeas corpus under §2254 be filed within one year of the date on which the state judgment becomes final. 28 U.S.C. § 2244(d)(1). Ray's state conviction became final on or about September 10, 2003, more than three-and-a-half years before he filed his § 2254 petition in this Court. Ray contends, however, that his petition is nevertheless timely because the one-year limitation period was tolled during the time his motion for state post-conviction relief under section 974.06 of the Wisconsin Statutes was pending before the state courts. See 28 U.S.C. § 2244(d)(2) ("The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection."). Ray's motion for state post-conviction relief was filed on October 13, 2006, however, more than two years after his conviction became final, and the belated filing of a § 974.06 motion for post conviction relief does not reopen a limitation period that has already expired. See Teas v. Endicott, 494 F.3d 580, 581 (7th Cir. 2007) ("Nothing in § 2244(d) implies that the time is reopened if the state court engages in multiple rounds of review that it calls "direct."). But Ray contends that he handed his § 974.06 motion to a social worker at the private correctional facility where he was serving his sentence on April 27, 2004, well within the one-year period. He claims that he prepared and filed a second motion on October 13, 2006, only after he

---

[2]The Court withheld ruling on the admission of exhibits offered during the hearing. Ray's Exhibits 0 through 21 are received with the exception of Exhibits 17 and 18, both of which are affidavits by prisoners who did not testify. The statements in the affidavits are offered for the truth of the matter asserted and, absent an opportunity for cross-examination, the Court cannot assess the credibility of the declarant. Respondent's Exhibits 1000 and 1001 are also received.

2

A-08

learned that the original had not been mailed to the state court as he had requested, and argues that under the mailbox rule his § 974.06 motion must be deemed filed at the time he gave the first motion to a prison official for mailing. *See Houston v. Lack*, 487 U.S. 266 , 276 (1988) (holding that notice of appeal is deemed filed at the time petitioner delivered it to the prison authorities for forwarding to the court clerk). That motion therefore remained pending from April 27, 2004, he argues, and thus tolled the running of the one-year limitation period until ninety days after the Wisconsin Supreme Court denied his petition for review. Since by that time Ray had filed his § 2254 petition, he contends that it must be found timely.

Before turning to the facts of the case, it should be noted that this case differs from *Houston* and most of the cases in which the mailbox rule is invoked where the required filing is actually received by the court, but some time after the statutory deadline. In *Houston*, for example, the inmate's notice of appeal from the denial of his habeas petition was received by the court one day after the thirty-day time limit for an appeal, even though he placed it in the prison mail three days before the deadline. The issue presented was whether the notice of appeal actually received by the trial court should be deemed filed when placed in the mail. Here, by contrast, the state court never received Ray's initial motion for post-conviction relief; he claims that he prepared and filed a new motion after he learned from the clerk that his initial motion had never been received. It is not clear how the rule applies in a case like this.

As Judge Stadtmueller has recently noted, two circuits that have addressed the issue have taken different approaches in deciding how the mailbox rule applies where the filing was never received. *Johnson v. United States*, Case No. 10-CV-341, 2010 WL 2490694, *2 (E.D. Wis. June 17, 2010). In *Huizar v. Carey*, the Ninth Circuit held that a prisoner who delivers a document for

3

A-09

mailing that is never received by the court "gets the benefit of the prison mailbox rule, so long as he diligently follows up once he has failed to receive a disposition from the court after a reasonable period of time." 273 F.3d 1220, 1223 (9th Cir. 2001). The Eleventh Circuit, on the other hand, held in *Allen v. Culliver* that if the district court makes a finding of fact that the prisoner timely mailed the document, then the prisoner is entitled to the "prison mail box rule," even if the document was never received, and regardless of the prisoner's diligence in following up. 471 F.3d 1196, 1198 (11th Cir. 2006). The Eleventh Circuit rejected the Ninth Circuit's "diligence" requirement, reasoning that if a document is deemed "filed" under *Houston* when delivered to prison authorities, then a lack of diligence on the part of the prisoner cannot operate to "un-file" the document. *Id.* However, even under the Eleventh Circuit's approach the inmate's diligence remains relevant because "[t]he district court may take into account any and all relevant circumstances, including any lack of diligence on the part of [the inmate] in following up in a manner that would be expected of a reasonable person in his circumstances, in deciding whether the notice was delivered to the prison authorities." *Id.* The Seventh Circuit has yet to address the issue, but regardless of which approach is applied here, the Court finds on the evidence presented that Ray's petition was not filed within the one-year period allowed under § 2244(d)(1).

At that hearing, Ray testified, consistent with his affidavit, that he handed his state post-conviction motion to Ms. Tamara Smith, a social worker with Diamondback Correctional Facility, with postage prepaid and addressed to the Milwaukee County Circuit Court on April 27, 2004. Diamondback was a private correctional facility located in Oklahoma and operated by the Corrections Corporation of America ("CCA"), which at that time apparently contracted with the Wisconsin Department of Corrections to house Wisconsin prisoners. Wisconsin no longer contracts

4

A-10

with CCA to house its prisoners, however, and counsel for Respondent stated that her repeated efforts to obtain information from CCA about Diamondback, which has since been shut down, went largely unheeded.

Although the CCA Corporate And Facility Policy for Diamondback that counsel was able to obtain states that "all outgoing legal mail is logged in at the mailroom when it is received" (Ex. 1001, ¶ 16-1.5(C)(1)(f)), Ray testified that he was being held in administrative confinement in preparation for his transfer back to Wisconsin at the time, and therefore did not have access to the normal mail channel. He instead handed his motion to Ms. Smith for mailing. Ms. Smith took Ray into an office and handed Ray a "Certificate Of Service By Mail," which he filled out and signed, while she completed and signed a "CCA Privileged Correspondence Receipt." Smith then gave Ray copies of both forms. Three days later, Ray was returned to Wisconsin and placed at Green Bay Correctional Institution.

Ray testified that on June 1, 2004, approximately one month after his return to Wisconsin, he wrote to Ms. Smith inquiring about his motion. Ray's letter to Smith, a copy of which he retained, reads:

> Dear Mrs. Smith,
>
> On April 27, 2004 I came to your office concerning me mailing out my "Postconviction Relief Pursuant to 974.06{4} motion. while in your office I placed said motion in your hands and you filled out a "Certificate Of Service By Mail {attached} and gave me a copy and placed a copy in your file. Later that month I was transferred back to the wisconsin prison system. I haven't heard anything from the Milwaukee County Clerk regarding said motion had been received and filed. can you please make sure said motion was mailed out? thank you.

(Ex. 2.) Ray testified that he received no response to his letter and sent a second, almost identical letter to Smith, a copy of which he also retained, on September 9, 2004. (Ex. 3.) Ray testified he

5

received no response and wrote a third letter to Smith on June 15, 2005, again asking her to "inform me what happen to said motion once I placed it in your hands." (Ex. 4.)  Again he received no response.

Finally, on October 4, 2006, Ray testified that he sent a notarized letter to the Clerk of the Circuit Court for Milwaukee County and asked about the "current status of my postconviction relief pursuant to 974.06[4] Wis. stats. that I mailed out in April of 2004." (Ex. 5.)  The Clerk filed Ray's letter on October 6, 2006, and returned a copy to him with the notation, "Our records do not show any motion filed in 2004." (*Id.*)  Upon learning that his original motion had not been filed, Ray testified that he quickly prepared a duplicate motion which he filed on October 13, 2006, and which was denied by the court on October 16, 2006.  Ray appealed the denial of his motion to the Wisconsin Court of Appeals, and while his appeal was still pending, he filed his petition for § 2254 relief with this court.

To corroborate his testimony that he had handed his motion for state post-conviction relief to Ms. Smith on April 27, 2004, Ray offered into evidence the Certificate of Service by Mail, the copies of the three letters he sent to Ms. Smith, and the copy of the letter he sent to the Clerk of Court for Milwaukee County. (Exs. 1-5.)  In addition to these documents, Ray testified that after the Seventh Circuit reversed this Court's denial of his petition and remanded the case to determine whether his petition was timely, he also located the CCA "Privileged Correspondence Receipt" Ms. Smith had given him when he handed her his motion for state post-conviction relief.  Ray recognized the importance of the Receipt because it was signed by Ms. Smith.  All of the other documents Ray offered in support of his claim that he attempted to file his § 974.06 motion before October of 2006 bore only his signature.  Ray testified that he had not presented the Receipt earlier

6

because it was not in his possession. One of the inmates who was helping him on his case had it in his possession when the inmate was transferred to another institution. Ray testified that he did not receive it back until later and only found it after the Seventh Circuit remanded his case back to this Court to address the Respondent's defense that the petition was barred by the one-year limitation.

Unfortunately, Ray was unable to offer the Privileged Correspondence Receipt into evidence. Ray testified that New Lisbon Correctional Institution (NLCI) prison officials had lost the document when he submitted it to them for copying on April 18, 2010. In support of this allegation, Ray offered the Disbursement Request form authorizing a disbursement of thirty cents from his inmate account to pay for "two copies of a Corrections Corporation of America Privileged Correspondence Receipt form signed by CCA Social Worker Smith regarding me placing my 974.06 motion in her hands April 27, 2004." (Ex. 6.) The Disbursement Request form is signed by NLCI Correctional Officer Nedbal. Ray also offered the Photocopy Request form in which he requested that the two copies of the "CCA Mail Form Receipt" be sent to him through the institutional mail. (Ex. 7.) A notation on the Photocopy Request form indicates the requested copies were made on April 19, 2010, but Ray testified that he never received either the copies or his original CCA Privileged Correspondence Receipt. Ray testified that he submitted several interview/request forms to various staff requesting their assistance in locating the missing form, but despite an apparently diligent investigation, they were unable to locate it. (Exs. 8, 9, 11, 12, 13.) Nevertheless, Ray argues that the Disbursement Request form signed by Officer Nedbal and other documentation detailing the prison's investigation into its disappearance demonstrate that the CCA

7

A-13

form signed by Smith did in fact exist and further supports his claim that he did hand his motion for

state post-conviction relief to her on April 27, 2004.

Ray argues that this evidence is more than sufficient to demonstrate that his § 2554 petition

is timely, particularly since, contrary to the Court's previous ruling on the issue, the Respondent

bears the burden of proof on the question of whether the mailbox rule applies.    In its Decision

Denying Dispositive Motions, the Court held that it was Ray's burden to prove that he handed his

motion to prison officials for mailing:

> Since the period of limitations is an affirmative defense, Respondent would
> normally carry the burden of proof on whether it bars Ray's petition.  *Gildon v.*
> *Bowen*, 384 F.3d 883, 886 (7th Cir. 2004).  The prisoner mailbox rule, however, is
> an exception to the normal statute of limitations, and thus Ray bears the burden of
> proving that it applies here.  *See Knox v. Cook County Sheriff's Police Dept.*, 866
> F.2d 905, 907 (7th Cir. 1988) ("While the statute of limitations is an affirmative
> defense, the burden of establishing an exception thereto is on plaintiff.").
> Otherwise, Respondent would be required to prove a negative: that Ray did not
> deliver his motion to prison officials for mailing within the limitations period.

(Doc. 56 at 10-11.)  Ray challenges this ruling, citing several cases that hold that once a prisoner

files a sworn affidavit or declaration in which he states that he placed the required pleading or notice

in the hands of prison officials postage prepaid and addressed to the proper clerk or court, "the

burden of producing evidence in support of a contrary factual finding" shifts to the opposing party.

*Caldwell v. Amend*, 30 F.3d 1199, 1203 (9th Cir. 1994); *Allen v. Culliver*, 471 F.3d at 1198 ("With

respect to any such inquiry on remand, we construe both Houston and Fed. R. App. P. 4(c) to imply

that the burden of proof should be placed upon the state if Allen has satisfied the requirement of

Fed. R. App. P. 4(c)(1)."); *see also Parker v. Evans*, 350 Fed. Appx. 77, 79 (7th Cir. 2009) ("The

information Parker provided is sufficient to satisfy the mailbox rule and allow for a timely appeal.

He swore in his declaration "upon oath as true" that he placed the notice of appeal in a sealed

8

envelope with "prepaid postage" on or before May 14. Parker's trust fund transaction report, which shows that the next day the prison debited his account for "legal postage" in an amount equal to first-class postage, corroborates his assertion. We conclude that Parker abided by Rule 4(c)(1) and should receive its benefit, rendering this appeal timely."). Having submitted a declaration attesting to the facts needed to invoke the mailbox rule, Ray argues that the burden of proof is on the Respondent to come forward with evidence, such as prison mail logs or the testimony of prison officials with actual knowledge of the facts, to refute his evidence. Because the Respondent has failed to offer such evidence here, Ray argues that the Court must find in his favor.[3]

The Court does not read the cited cases to stand for the proposition that the respondent initially carries the burden of proof on the question whether the mailbox rule applies. Indeed, each of the cited cases, as well as the codification of the mailbox rule in Fed. R. App. P. 4(c), place on the prisoner claiming the benefit of the rule the initial burden of presenting a sworn declaration setting forth the requirement of having handing the prison official the document to be filed with postage prepaid. On the other hand, Ray is correct that once the prisoner presents such evidence, as Ray has here, the burden does shift to the respondent to refute it. This is in recognition of the difficulty prisoners have in documenting actions they take other than by their own word. *See*

---

[3]Ray suggests that Respondent's failure to obtain and introduce into evidence a copy of the mail log from Diamondback leaves his account undisputed and requires a finding in his favor regardless of whether the Court finds his account credible. But if Ms. Smith failed to deliver his motion to the mailroom, as Ray's argument suggests, the mail log would tell us nothing. It certainly would have been helpful to have Ms. Smith testify about what, if anything she recalls. More likely, she or some else from Diamondback could have explained the procedure and forms used for outgoing legal mail, but counsel for Respondent claims she was unable to obtain such information or locate such a witness. If Ray was still pro se, Respondent's failure to produce such evidence might be viewed differently, but Ray has been represented by a reputable Chicago law firm since December 4, 2008. Such evidence, if it exists, should have been equally available to Ray's attorney.

9

*Houston*, 487 U.S. at 275-76 (prisons "have well-developed procedures for recording the date and time at which they receive papers for mailing and ... can readily dispute a prisoner's assertions that he delivered a paper on a different date ... the prison will be the only party with access to at least some of the evidence needed to resolve such questions."). But a finding that the filing is timely is not mandated where the state fails to respond with a prison log or testimony of a prison official specifically disputing the prisoner's declaration. As the Eleventh Circuit noted in *Allen*,

> the district court may inquire further as to the actual facts concerning whether or not, and when, a notice of appeal was delivered to the prison authorities. The district court may take into account any and all relevant circumstances, including any lack of diligence on the part of Allen in following up in a manner that would be expected of a reasonable person in his circumstances, in deciding whether the notice was delivered to the prison authorities.

471 F.3d at 1198. Although the Court went on to emphasize that the burden was on the state once Allen satisfied the requirements of Fed. R. App. P. 4(c)(1), it is clear from the Court's discussion of the issue that the prisoner's declaration was not to be considered conclusive even where specific evidence directly contradicting the prisoner was not available.

Taking into consideration all of the surrounding facts and circumstances of this case, the Court does not find Ray's testimony that he handed his § 974.06 motion to Ms. Smith on April 27, 2004, credible. At the outset, one wonders why Ray would ask her to mail an important motion to Wisconsin from Oklahoma when he knew he was on his way back to Wisconsin in a matter of days. But even aside from that, if Ray had given her the motion for post-conviction relief for mailing on April 27, 2004, he would not have waited until October 4, 2006, to ask the clerk of the court to which the motion was supposed to have been mailed about the status of his motion. At the very least, he would have had to contact the court to let it know of the facility to which he had been

10

transferred. How else would the court know where to send its decision. Even aside from this problem, however, Ray's testimony that he did not ask the court about the status because he had been told by other inmates that courts get irritated when prisoners contact them does not explain why he waited two-and-a-half years to contact the clerk of the court, especially in light of the fact that his letters to Ms. Smith for confirmation that she mailed his motion went unanswered. If Ray was so concerned about the status of his motion that he first wrote Smith only a month after he gave her the motion for mailing, it is not credible that he would have taken no action other than to send her two nearly identical letters over the next year, both of which also received no response, and then wait another fifteen months before he finally wrote to the clerk of the court in which the motion was supposed to have been filed asking about its status.

Under the approach adapted by the Ninth Circuit in *Huizar v. Carey*, Ray's habeas petition would be found untimely on this evidence alone. Ray would not be entitled to the benefit of the mailbox rule even if he did hand his motion to Ms. Smith on April 27, 2004, because he did not diligently follow up with the court when he "failed to receive a disposition from the court after a reasonable period of time." 273 F.3d 223. The Ninth Circuit's approach is not unreasonable. The Supreme Court fashioned the mailbox rule to address the unique difficulties *pro se* prisoners face in insuring that required documents are filed within statutory deadlines. Unlike people on the outside, the Court noted that prisoners are forced to ask prison officials to place their documents in the mail and they can not immediately follow-up by calling the clerk to see if the document was received. *Houston*, 487 U.S. at 270-71. But even prisoners can write to the court in order to confirm that their intended filing has been received. They should certainly take such action before almost two-and-a-half years have passed without word from the court. Moreover, as Judge

11

Stadtmueller observed in *Johnson*, absent a requirement of reasonable diligence on the part of the prisoner, "there could be hundreds of cases technically filed with the court at any given time, yet the court would have absolutely no knowledge of such cases. Further, the lack of a diligence requirement means that these cases could be pending for years, so long as at some point in time a prisoner was able to show that however many years earlier he had timely 'filed' (i.e., delivered to prison officials) his document." 2010 WL 2490694 at *2. Absent the benefit of the mailbox rule, Ray's petition is clearly barred.

The Court would reach the same result under the approach utilized by the Eleventh Circuit in *Allen v. Culliver*. Using that approach, the Court may consider Ray's lack of diligence in deciding whether his claim that he actually delivered the motion to prison authorities is credible. 471 F.3d 1198; *see also Stoot v. Cain*, 570 F.3d 669, 672 (5th Cir. 2009) ("A failure to inquire about a lost petition is strong evidence that the petition was, in fact, never sent."). As already noted, this Court finds Ray's claim that he gave his motion to Ms. Smith for filing on April 27, 2004, incredible in light of the fact that he did not contact the clerk to check on its status until two-and-a-half years later. But it is not only Ray's lack of diligence in following up with the clerk earlier that causes this Court to reject his version of events. Inconsistencies in his own documentation and further implausibilities concerning that documentation also cause the Court to question Ray's version of events.

For example, Ray offers the three letters he claims he sent to Ms. Smith in an effort to confirm that she had mailed his motion to the state court as he had requested. (Exs. 2, 3, 4.) Ray claims these are copies of letters that he actually sent to Ms. Smith on the dates shown, but there is no way to tell from the appearance of the letters whether that is the case. It is somewhat curious

12

that he retained a copy of a letter he sent only a month after he handed Smith his motion for post-conviction relief, but did not retain a copy of the motion itself. It is also curious that he swore in his initial affidavit filed with his § 2254 petition, in which he requested equitable tolling of the one-year limitation, that he also wrote Diamondback regarding his lost property on the same three dates that appear on his letters to Ms. Smith. (Doc. 4, ¶¶ 4, 5, 7, 9.) When asked about his earlier affidavit, Ray explained that he had two or three boxes of legal work that prison officials misplaced when he was transferred back to Wisconsin. The legal materials were later returned to him, but Ray testified that he had written three separate letters to Diamondback regarding the property that apparently bore the same dates as his three letters to Ms. Smith. He could not recall whether he retained copies of those letters. Ray also mentioned in his affidavit that he forwarded correspondence to Social Worker Smith seeking answers as to what happened to his § 974.06 motion, but he references only one letter, not three, and states that it was "forwarded back to Ray as a return to sender." (Doc. 4, ¶ 14.) He did not mention his letter to Ms. Smith being returned to him in his testimony and, of course, if it was returned as he said in his affidavit, it makes his continued writing to Ms. Smith and delay in writing the clerk all the more unreasonable.

The Court also doubts the authenticity of "Certificate Of Service By Mail" form, which Ray claims Ms. Smith gave him to fill out. The certificate bears no signatures, other than Ray's, and appears on plain white paper with no heading or other indication that it is an official prison form. (Ex. 1.) It contains no space for the year of service, and contains numerous typographical errors. Even when compared with the official property request form from Ray's file (Ex. 21), which also lacks an institutional heading and contains a grammatical error, the Court remains convinced that

13

in both form and content the certificate looks more like the work product of a prisoner than a prison administration.

In addition, the Court doubts that Ray ever had a "Privileged Correspondence Receipt" signed by Ms. Smith. There is no mention of the Receipt by Ray or in any of his documentation until April 18, 2010, when he asked to have it photocopied, despite the fact that it is the only document he had to substantiate his claim that he handed his motion to Ms. Smith for mailing that allegedly bore her signature. Ray specifically referenced the "Certificate of Service by Mail" in his first letter to Smith dated June 1, 2004, which he incorrectly stated she had filled out. (Ex. 2.) He also emphasized the "Certificate of Service" in his "Motion For Protective Order Staying And Abeying [sic] Petitioner's Petition For Writ Of Habeas Corpus Filed Pursuant To 28 U.S.C. § 2254" that he filed with his petition in this Court on February 28, 2007, noting in bold that he had attached a copy of the certificate to his motion and stating, again incorrectly, that it was signed by Ms. Smith. (Doc. 3 at 3.) He attached copies of the three letters he claims he had sent Ms. Smith asking her to confirm she had mailed his motion to the state court as he had requested. Yet, he failed to even reference the one document which supposedly corroborated his account that bore someone's signature other than his own.

Ray's explanation for his failure to mention the "Privileged Correspondence Receipt" form earlier is inconsistent and not plausible. He testified that another inmate who was helping him with his motion had it in his possession when he was transferred to a different institution, and it wasn't until later (he's not sure when) that it was returned to him. Overall, Ray's explanation is that he did not understand the law governing federal habeas corpus at the time and did not appreciate the significance of the document. But this is an inmate who had two or three boxes of legal materials

14

when he was at Diamondback, and his initial filing in this Court, coming less than six months after he claims he first became aware that his original § 974.06 motion was not filed in state court, demonstrates detailed knowledge of not only the one-year limitation period for federal habeas petitions, but also the mailbox rule and the rules governing tolling of the one-year period. (Doc. 3, 4.) The fact that he noted in bold in a motion filed contemporaneously with his petition that the "Certificate of Service" was signed by "Tamara Smith, Social Worker for Diamondback Correctional Facility" shows that he knew the importance of a document signed by someone on the prison staff. And even if one accepts his testimony that he allowed one of his inmate helpers who was later transferred to a different institution to retain possession of such a crucial document, nothing prevented him from at least mentioning it in one of his previous filings. It is also noteworthy that the CCA Corporate and Facility Policy governing Diamondback does not mention either a "Privileged Correspondence Receipt" form or a "Certificate of Service By Mail" form, but it does specify the form to be used when privileged correspondence is distributed to an inmate. (Ex. 1001, ¶ 16-1.5(C)(2)(d) ("A staff member will distribute privileged correspondence to inmates using form 16-1D.")).

Finally, the Court finds Ray's evidence that the NLCI personnel lost his Privileged Correspondence Receipt form unconvincing. Based on the testimony presented, it is clear that the document Ray handed CO Nedbal for photocopying could have been a document he created in an attempt to manufacture additional evidence to corroborate his claim that he handed his § 974.06 motion to Ms. Smith on April 27, 2004. The detail in which Ray described the document in the Disbursement Request form (Ex. 6) suggests a purpose beyond a simple request for a thirty-cent disbursement for photocopying. Although the NLCI policy for photocopying required the inmate

15

to complete the Photocopy Request forms "with detailed instructions as to what is to be copied, including the number of copies" (Ex.15, ¶ 1 A. 2), the testimony of Lynn Martin, the librarian, indicates that the detail required concerned the directions for copying, i.e., number of copies, one or two sided, legal or letter size – not the document to be copied.  Library personnel were not expected to determine the authenticity of the documents submitted for copying.  They screened the material for appropriateness and to insure it did not relate to a different inmate.  In fact, Officer Nedbal testified that Correctional Officers were not allowed to read legal materials that inmates submitted for copying, and that he would look mainly to insure the name of the inmate who was submitting the document appeared on it.  His signature on the Disbursement Request form and acceptance of the document for copying, under the circumstances, cannot be reasonably viewed as proof of what the document was.  Having worked in the library himself, Ray would have known as much.

The documents generated in response to Ray's report that he never received the requested copies and that his Privileged Correspondence Receipt was not returned also fall short of substantiating his claim. The responses of the various prison officials demonstrate that they treated Ray's claim that a document crucial to his case had been lost at face value and conducted a thorough investigation in an attempt to find it.  According to the report of the Education Director David Hines, "the librarian and the library officer who recalled your copies and stated they were placed into the 'Institution Mailbag' for delivery to you on the housing floor." (Ex. 14.)  Director Hines followed up with various departments in an effort to locate the missing documents, but could not locate them and concluded that they were lost.  The conclusion that the documents were lost, however, was based solely on Ray's claim that he had not received them.  Ray, of course, could

16

have been lying. He could have received whatever document he submitted along with the copies he requested through the institutional mail as he had requested, but then denied having received them so that he could claim they were lost and thereby avoid having the document scrutinized. There was no tracking system in the institution that was used to document the return of material that inmates asked to have photocopied apparently because the loss of photocopied material had not previously been a problem. Both Officer Nedbal and Lynn Martin, the librarian, testified that they could not recall a previous instance where a document or copies were lost.

Given the investigation conducted by Director Hines, Ray testified that had someone delivered the Receipt and copies to him in his cell, they would have spoken up when a search was mounted to locate them. But that assumes whoever delivered them knew of the investigation and recalled having delivered the documents Ray claimed were lost at the time Hines was conducting his investigation. Hines' report was issued on May 6, 2010, two-and-a-half weeks after the copies were made and placed in the institution mailbag for return to Ray. Given the amount of litigation conducted by prisoners, it is unlikely that a guard would retain a specific recollection of what he delivered and when. Moreover, at the time, no one apparently had any reason to believe Ray had a motive to fabricate a story about the documents being lost. For these reasons, the Court does not find Ray's evidence relating to the Privileged Correspondence Receipt sufficient to overcome the weight of all the other facts and circumstances of the case.

In sum, the Court concludes that Ray's version of the events concerning the filing of his state motion for post-conviction relief is not credible. The Court therefore finds that Ray did not hand his motion to Ms. Smith on April 27, 2004, with a request that she mail it to the state court as he claims, and that the limitation period for filing § 2254 motions was not tolled. It follows that Ray

17

failed to file his motion within one year after his state court conviction became final. Accordingly, his petition is barred and the action must be dismissed. The Clerk is directed to enter judgment dismissing the action on the ground that the petition was not filed within the time allowed under 28 U.S.C. § 2244(d)(1).

      **SO ORDERED** this __23rd__ day of August, 2011.

s/ William C. Griesbach     
William C. Griesbach
United States District Judge

18

A-24

AO 450 (Rev. 5/85) Judgment in a Civil Case ®

# United States District Court

### EASTERN DISTRICT OF WISCONSIN

ELLIOT DON RAY,
        Petitioner,

v.

WILLIAM POLLARD,
        Respondent.

**JUDGMENT IN A CIVIL CASE**

Case No. 07-C-190

☐    **Jury Verdict.** This action came before the Court for a trial by jury. The issues have been tried and the jury has rendered its verdict.

☒    **Decision by Court.** This action came before the Court for consideration.

    **IT IS HEREBY ORDERED AND ADJUDGED** that Elliot Don Ray take nothing and this action is DISMISSED on the ground that the petition was not filed within the time allowed under 28 U.S.C. § 2244(d)(1).

                Approved:      s/ William C. Griesbach
                               WILLIAM C. GRIESBACH
                               United States District Judge

Dated:  August 24, 2011.

                               JON W. SANFILIPPO
                               Clerk of Court

                               s/ A. Wachtendonck
                               (By) Deputy Clerk

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

ELIOT DON RAY,

          Petitioner,

     v.                                          Case No. 07-C-190

WILLIAM POLLARD,

          Respondent.

---

## ORDER GRANTING CERTIFICATE OF APPEALABILITY

---

A certificate of appealability may issue only if the applicant makes a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). The standard for making a "substantial showing" is whether reasonable jurists could debate whether the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further. *Barefoot v. Estelle*, 463 U.S. 880, 893 & n. 4 (1983). If the court issues a certificate of appealability it must indicate on which specific issue or issues the petitioner has satisfied the "substantial showing" requirement. 28 U.S.C. § 2253(c)(3).

Despite my conclusion in an earlier order, Docket 67, that Ray's claim ultimately fails, I conclude the petitioner has made a substantial showing on the issue of whether his petition was timely under the AEDPA rules. Accordingly, the certificate of appealability will be granted as to that claim.

Dated this   29th   day of September, 2011.

                              s/ William C. Griesbach
                              William C. Griesbach
                              United States District Judge

Case 1:07-cv-00190-WCG   Filed 09/29/11   Page 1 of 1   Document 75

A-26

APPEAL, CLOSED, HABEAS

# United States District Court
# Eastern District of Wisconsin (Green Bay)
## CIVIL DOCKET FOR CASE #: 1:07-cv-00190-WCG

Ray v. Pollard

Assigned to: Judge William C Griesbach

Case in other court: USCA 7th Circuit, 08-2825 07/18/08

USCA Ray 08/04/08, 08-3107

Cause: 28:2254 Petition for Writ of Habeas Corpus (State)

Date Filed: 02/28/2007

Date Terminated: 08/24/2011

Jury Demand: None

Nature of Suit: 530 Habeas Corpus (General)

Jurisdiction: Federal Question

**Petitioner**

**Elliot Don Ray**                                represented by     **Jeetander T Dulani**
                                                                     Pillsbury Winthrop Shaw Pittman LLP
                                                                     2300 N St NW
                                                                     Washington, DC 20037
                                                                     202-663-8383
                                                                     Fax: 202-663-8007
                                                                     Email: jeetander.dulani@pillsburylaw.com
                                                                     *ATTORNEY TO BE NOTICED*

                                                                     **Thomas C Hill**
                                                                     Pillsbury Winthrop Shaw Pittman LLP
                                                                     2300 N St NW
                                                                     Washington, DC 20037
                                                                     202-663-8073
                                                                     Fax: 202-663-8007
                                                                     *ATTORNEY TO BE NOTICED*

V.

**Respondent**

**William Pollard**                              represented by     **Aaron R O'Neil**
                                                                     Wisconsin Department of Justice
                                                                     Office of the Attorney General
                                                                     17 W Main St
                                                                     PO Box 7857
                                                                     Madison, WI 53707-7857
                                                                     608-266-1740
                                                                     Fax: 608-266-9594
                                                                     Email: oneilar@doj.state.wi.us
                                                                     *ATTORNEY TO BE NOTICED*

                                                                     **Katherine Desmond Lloyd**
                                                                     Wisconsin Department of Justice
                                                                     Office of the Attorney General

A-27

17 W Main St
PO Box 7857
Madison, WI 53707-7857
608-266-7323
Fax: 608-266-9594
Email: lloydkd@doj.state.wi.us
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 02/28/2007 | 1 | PETITION for Writ of Habeas Corpus filed by Elliot Don Ray. Consent Forms to be Distributed for Magistrate Judge Patricia J Gorence. (mec) (Entered: 03/02/2007) |
| 02/28/2007 | 2 | MOTION for Leave to Proceed in forma pauperis by Elliot Don Ray. (mec) (Entered: 03/02/2007) |
| 02/28/2007 | 3 | PETITION DOCKETED AS MOTION for Protective Order Staying and Abeying Petition for Writ of Habeas by Elliot Don Ray. (mec) (Entered: 03/02/2007) |
| 02/28/2007 | 4 | AFFIDAVIT of Elliot Don Ray. (mec) (Entered: 03/02/2007) |
| 03/07/2007 | 5 | ORDER signed by Judge William C Griesbach on March 6, 2007. The petitioner will be granted 21 days within which either to pay the required $5 filing fee or to submit an updated trust fund statement and show cause as to why he cannot afford the filing fee. Failure to take either action in the allotted time frame will result in denial of his application to proceed in forma pauperis and dismissal of his habeas petition. (cc: all counsel)(Griesbach, William) |
| 03/07/2007 | | Copy of Order 5 sent via U.S. Mail to Elliot Don Ray. (mec) |
| 03/14/2007 | | FILING FEE Received: $5.00, receipt number 103 2065. (mec) |
| 03/27/2007 | 6 | ORDER signed by Judge William C Griesbach on March 26, 2007. IT IS THEREFORE ORDERED that petitioner's claims that his rights under the Confrontation Clause of the Sixth Amendment and the Due Process Clause of the Fourteenth Amendment, as set forth above, are summarily DISMISSED pursuant to Rule 4 of the Rules Governing § 2254 Cases. IT IS FURTHER ORDERED that petitioner's 3 request to stay his habeas petition until he has exhausted his state court remedies as to his remaining claims is GRANTED. The Clerk is directed to administratively close this file. In the event petitioner fails to exhaust his state court remedies within the next six months, the case will be dismissed without further notice unless petitioner shows cause why he has not exhausted all available state court remedies by that time. (cc: all counsel) (Griesbach, William) |
| 03/27/2007 | | Copy of Order 6 sent via U.S. Mail to Elliot Don Ray, Timothy Lundquist (w/ copy of petition), AAG Gregory M. Weber (w/copy of petition). (mec) |
| 04/05/2007 | 7 | MOTION for Reconsideration by Elliot Don Ray. (mec) |
| 06/13/2007 | 8 | ORDER DENYING 7 Motion for Reconsideration signed by Judge William C Griesbach on June 13, 2007. (cc: all counsel) (Griesbach, William) |
| 06/13/2007 | | Copy of Order 8 sent via U.S. Mail to Elliot Don Ray. (mec) |
| 08/10/2007 | 9 | REQUEST by Elliot Don Ray for extension of stay as to his habeas petition. (tlf) |

| 08/13/2007 | | MARGIN ORDER GRANTING 9 Request to extend stay of habeas petition, signed by Judge William C Griesbach on August 13, 2007. (cc: all counsel)(Griesbach, William) |
| --- | --- | --- |
| 08/13/2007 | | Copy of Margin Order sent via U.S. Mail to Elliot Don Ray. (mec) |
| 06/09/2008 | 10 | ORDER directing petitioner to advise the court of the current status of the state proceedings and whether the stay can be lifted. Petitioner shall respond in 30 days or case will be dismissed. Copy sent via US Mail to Elliott Don Ray. (cc: all counsel) (Griesbach, William) (Entered: 06/10/2008) |
| 06/24/2008 | 11 | RESPONSE to Court Order and MOTION to Amend Petition for Habeas Corpus by Elliot Don Ray. (Attachments: # 1 Proposed Amended Petition)(mec) (Entered: 06/26/2008) |
| 07/07/2008 | 12 | ORDER signed by Judge William C Griesbach on July 7, 2008. IT IS ORDERED, that the stay of this matter is hereby lifted. IT IS FURTHER ORDERED that this petition is summarily dismissed pursuant to Rule 4 of the Rules Governing § 2254 Cases. (cc: all counsel)(Griesbach, William) |
| 07/07/2008 | 13 | JUDGMENT entered by Deputy Clerk approved by Judge William C Griesbach on July 7, 2008. IT IS HEREBY ORDERED AND ADJUDGED that this petition is summarily dismissed pursuant to Rule 4 of the Rules Governing § 2254 Cases. (mec) |
| 07/07/2008 | | Copy of Order 12 and Judgment 13 sent via U.S. Mail to Elliot Don Ray. (mec) |
| 07/18/2008 | 14 | NOTICE OF APPEAL as to 12 Order and 13 Judgment by Elliot Don Ray. (cc: all counsel) (mec) |
| 07/18/2008 | 15 | Request for Certificate of Appealability by Elliot Don Ray. (mec) |
| 07/18/2008 | 16 | MOTION for Leave to Appeal in forma pauperis by Elliot Don Ray (mec). |
| 07/18/2008 | 17 | 7th Circuit Information Sheet re: 14 Notice of Appeal. (mec) |
| 07/18/2008 | 18 | Pro se Cover Letter re: 14 Notice of Appeal. (mec) |
| 07/18/2008 | 19 | Transmission of Notice of Appeal and Docket Sheet to US Court of Appeals re 14 Notice of Appeal. (mec) |
| 07/18/2008 | | Copy of Pro Cover Letter 18 , Short appeal record 19 and $5.00 check returned - sent via U.S. Mail to Elliot Don Ray. (mec) |
| 07/22/2008 | 20 | ORDER granting 16 Motion for Leave to Appeal in forma pauperis and request for A ceritificate of appealability. (cc: all counsel) (Griesbach, William) |
| 07/22/2008 | | Copy of Order on Motion for Leave to Appeal in forma pauperis 20 sent via U.S. Mail to Elliot Don Ray and via e-mail to USCA. (cav) |
| 07/23/2008 | 21 | NOTICE OF DOCKETING in USCA Case Number 08-2825 re: 14 Notice of Appeal filed by Elliot Don Ray. (mec) (Entered: 07/24/2008) |
| 07/29/2008 | | Appeal Record Prepared re 14 Notice of Appeal. (mec) |
| 08/04/2008 | 22 | NOTICE OF APPEAL as to 12 Order and 20 Order by Elliot Don Ray. (cc: all counsel) (Attachments: # 1 Memo from USCA forwarding appeal documents)(mec) (Entered: 08/18/2008) |

| 08/04/2008 | 23 | Docketing Statement by Elliot Don Ray re 22 Notice of Appeal. (cc: all counsel) (mec) (Entered: 08/18/2008) |
| 08/04/2008 | 24 | Request for Certificate of Appealability by Elliot Don Ray. (mec) (Entered: 08/18/2008) |
| 08/18/2008 | 25 | 7th Circuit Information Sheet re: 22 Notice of Appeal. (mec) |
| 08/18/2008 | 26 | Pro Se Cover Letter re: 22 Notice of Appeal. (mec) |
| 08/18/2008 | 27 | Transmission of Notice of Appeal and Docket Sheet to US Court of Appeals re 22 Notice of Appeal. (mec) |
| 08/18/2008 | | Copy of Pro Se Cover Letter 26 , appeal short record 27 sent via U.S. Mail to Elliot Don Ray. (mec) |
| 08/20/2008 | 28 | USCA Case Number 08-3107 re: 22 Notice of Appeal filed by Elliot Don Ray. (tlf) |
| 08/28/2008 | 29 | USCA Mandate (certified copy) as to 22 Notice of Appeal filed by Elliot Don Ray USCA Number 08-3107. Appeal is dismissed. (cav) (Entered: 08/29/2008) |
| 10/09/2008 | 30 | Appeal Record Request received from 7th Cir. Re: USCA Case Number 08-2825. (cav) (Entered: 10/10/2008) |
| 10/10/2008 | 31 | Certified Record on Appeal Transmitted to US Court of Appeals consisting of 1 volume of pleadings re 14 Notice of Appeal (cc: all counsel) (cav) |
| 12/04/2008 | 32 | ORDER of USCA re 14 Notice of Appeal filed by Elliot Don Ray. Attorney John A Sholar, Jr, Winston and Strawn, 35 W Wacker Dr, Chicago, IL is appointed to represent petitioner-appellant Elliot Ray. (tlf) |
| 02/18/2009 | 33 | ORDER of USCA re 14 Notice of Appeal filed by Elliot Don Ray. Attorney John A Sholar's motion to withdraw as counsel is granted. Attorney Jeetander T Dulani, Winston & Strawn, 35 W Wacker Dr, Chicago, IL 60601 is appointed to represent petitioner-appellant Elliot D Ray. (tlf) |
| 04/12/2010 | | Appeal Record Returned consisting of 1 Volume of Pleadings re 14 Notice of Appeal. (mec) |
| 04/13/2010 | 34 | USCA Mandate (certified copy) as to 14 Notice of Appeal filed by Elliot Don Ray, USCA Number 08-2825 ; case reopened. The judgment of the district court is reversed and the case is remanded in accordance with the decision of USCA. (Attachments: # 1 Certified Opinion, # 2 Certified Judgment)(tlf) |
| 04/19/2010 | 35 | NOTICE of Hearing: (cc: all counsel) Status Conference set for 4/27/2010 10:00 AM before Judge William C Griesbach. (cav) |
| 04/19/2010 | | Copy of Notice of Hearing 35 sent via U.S. Mail to Elliot Don Ray (cav) |
| 04/20/2010 | 36 | NOTICE of RESCHEDULED Hearing: (cc: all counsel) Status Conference previous set for 4/27/2010 10:00 AM is now set for 4/27/2010 03:00 PM before Judge William C Griesbach. (Copy sent via e-mail to Jeetander Dulani)(cav) |
| 04/21/2010 | 37 | REQUEST by Jeetander Dulani and Katherine Lloyd to appear by telephone at the 4/27/10 status hearing. (cav) |

| | | |
|---|---|---|
| 04/22/2010 | | MARGIN ORDER GRANTING 37 Joint Request to appear by telephone filed by Elliot Don Ray and Timothy Lundquist, signed by Judge William C. Griesbach on 04/22/2010. Counsel shall contact the clerk's office at (920) 884-3720 and provide the telephone number which should be used for the conference. At the time of the scheduled conference the Court will initiate the call. (cc: all counsel)(Griesbach, William) |
| 04/27/2010 | 38 | Minute Entry for proceedings held before Judge William C Griesbach: Telephone Status Conference held on 4/27/2010. Telephone Status Conference set for 6/18/2010 09:00 AM before Judge William C Griesbach. (Tape #042710) (mec) (Entered: 04/28/2010) |
| 06/18/2010 | | NOTICE of Hearing: The Telephone Status Conference set for 6/18/2010 at 9:00 AM before Judge William C Griesbach has been RESCHEDULED to 6/22/2010 11:00 AM due to the non-appearance of AAG Katherine D Lloyd. Absent a reasonable explanation for her failure to appear, the court has directed that Ms Lloyd appear in person for the conference set for 6/22/2010 11:00 AM. (cc: all counsel)(tlf) |
| 06/18/2010 | 39 | LETTER from Respondent Re: 6/18/10 Phone Conference And Rescheduled Phone Conference on 6/22/10. (Lloyd, Katherine) |
| 06/21/2010 | | TEXT ONLY ORDER granting 39 Letter Request signed by Judge William C Griesbach on 6/21/2010. AAG Katherine Lloyd may appear by telephone for the status conference set for 6/22/2010 at 11:00 AM. (cc: all counsel)(Griesbach, William) |
| 06/22/2010 | 40 | Minute Entry for proceedings held before Judge William C Griesbach: Telephone Status Conference held on 6/22/2010. (tlf) |
| 06/29/2010 | 41 | LETTER from Respondent RE: filing of Petition for Writ of Certiorari in U.S. Supreme Court. (Lloyd, Katherine) |
| 06/30/2010 | | TEXT ONLY ORDER GRANTING 41 Letter request to stay any further proceedings in this matter pending the outcome of the petition for certiorari filed in the UnitedStates Supreme Court, signed by Judge William C. Griesbach on 06/30/2010. (cc: all counsel) (Griesbach, William) |
| 11/23/2010 | 42 | LETTER from Ana Boatwright, Respondent requesting stay be lifted. (Attachments: # 1 Certificate of Service)(Lloyd, Katherine) |
| 11/29/2010 | | NOTICE of Hearing: (cc: all counsel)Telephone Status Conference set for 12/7/2010 09:30 AM before Judge William C Griesbach. Counsel are to appear by telephone. The court will initiate the call. Counsel are to provide the Office of the Clerk with the telephone number at which they can be reached.(cav) |
| 12/07/2010 | 43 | Minute Order. Proceedings held before Judge William C Griesbach: Status Conference held on 12/7/2010. Respondent's motion due by 12/21/2010, response due by 01/20/2011 and reply due 02/03/2011. (Tape #120710.) (cav) (Entered: 12/08/2010) |
| 12/21/2010 | 44 | MOTION to Dismiss Petition for Writ of Habeas Corpus by Timothy Lundquist. (Lloyd, Katherine) |
| 12/21/2010 | 45 | BRIEF in Support filed by Timothy Lundquist re 44 MOTION to Dismiss Petition for Writ of Habeas Corpus. (Attachments: # 1 Exhibit A - Judgment of Conviction dated April 2, 2001, # 2 Exhibit B - Court of Appeals Decision dated January 28, 2003, # 3 Exhibit C - Court of Appeals Decision dated October 2, 2007, # 4 Certificate of Service)(Lloyd, Katherine) |

| 01/20/2011 | 46 | RESPONSE to Motion filed by Elliot Don Ray re 44 MOTION to Dismiss *Petition for Writ of Habeas Corpus*. (Attachments: # 1 Exhibit Ex A - Certificate of Service Receipt, # 2 Exhibit Ex B - First Letter to Smith, # 3 Exhibit Ex C - Second Letter to Smith, # 4 Exhibit Ex D - Third Letter to Smith, # 5 Exhibit Ex E - Letter to Clerk, # 6 Exhibit Ex F - Ray Feb 2007 Affidavit, # 7 Exhibit Ex G - Certificate of Service) (Dulani, Jeetander) |
| 01/20/2011 | 47 | MOTION for Summary Judgment by Elliot Don Ray. (Dulani, Jeetander) |
| 01/20/2011 | 48 | Brief in Support of 47 MOTION for Summary Judgment by Elliot Don Ray. (Attachments: # 1 Affidavit Ex 1 - Ray Aff, # 2 Exhibit Ex A - Ray Certificate of Service, # 3 Exhibit Ex B - First Letter Smith, # 4 Exhibit Ex C - Second Letter Smith, # 5 Exhibit Ex D - Third Letter Smith, # 6 Exhibit Ex E - Letter to Clerk, # 7 Exhibit Ex F - Ray 2007 Aff, # 8 Exhibit Ex G - Disbursement Form, # 9 Exhibit Ex H - Photocopy Form, # 10 Exhibit Ex I - Info Form Martin Hines, # 11 Exhibit Ex J - Info Emerson, # 12 Exhibit Ex K - Second Info Emerson, # 13 Exhibit Ex L - Info Trepes, # 14 Exhibit Ex M - Letter Warden, # 15 Exhibit Ex N - Second Info Hines, # 16 Exhibit Ex O - Memo Hines, # 17 Exhibit Ex P - Photocopy Procedure, # 18 Exhibit Ex Q - Certificate of Service)(Dulani, Jeetander) Modified on 1/21/2011 (aw). |
| 01/31/2011 | 49 | MOTION for Extension of Time *to File Reply Brief* by Timothy Lundquist. (Attachments: # 1 Certificate of Service)(Lloyd, Katherine) |
| 02/01/2011 | | TEXT ONLY ORDER GRANTING 49 MOTION for Extension of Time to File Reply Brief, filed by Timothy Lundquist, signed by Judge William C. Griesbach on 02/01/2011. Respondent's reply brief is now due February 10, 2011. (cc: all counsel) (Griesbach, William) |
| 02/10/2011 | 50 | RESPONSE to Motion filed by Timothy Lundquist re 47 MOTION for Summary Judgment. (Tripp, Katherine) |
| 02/10/2011 | 51 | REPLY BRIEF in Support filed by Timothy Lundquist re 44 MOTION to Dismiss *Petition for Writ of Habeas Corpus*. (Attachments: # 1 Certificate of Service)(Tripp, Katherine) |
| 02/10/2011 | 52 | MOTION for Leave to File *Sur-Reply* by Elliot Don Ray. (Dulani, Jeetander) |
| 02/11/2011 | 53 | RESPONSE to Motion filed by Timothy Lundquist re 52 MOTION for Leave to File *Sur-Reply*. (Attachments: # 1 Certificate of Service)(Lloyd, Katherine) |
| 02/14/2011 | 54 | ORDER signed by Judge William C Griesbach on 2/14/2011 granting 52 Motion for Leave to File. Petitioner may file sur-reply brief of no more than 10 pages on or before 2/21/2011. (cc: all counsel) (Griesbach, William) |
| 02/21/2011 | 55 | REPLY filed by Elliot Don Ray re 51 Reply Brief in Support of Motion, 50 Response to Motion, 54 Order on Motion for Leave to File *Sur-Reply to Respondent's Reply Brief*. (Attachments: # 1 Certificate of Service)(Dulani, Jeetander) |
| 04/22/2011 | 56 | ORDER denying 44 Motion to Dismiss and denying 47 Motion for Summary Judgment, signed by Judge William C. Griesbach on 04/22/2011. The Clerk is directed to set this matter on the Courts calendar for a telephone conference to address further scheduling. (cc: all counsel) (Griesbach, William) |
| 04/22/2011 | | NOTICE of Hearing: (cc: all counsel)Telephone Scheduling Conference set for 5/5/2011 09:30 AM before Judge William C Griesbach. (cav) |

| 04/25/2011 | | NOTICE of RESCHEDULED Hearing: (cc: all counsel) Telephone Conference previously scheduled for 5/05/11 has been rescheduled to 4/26/2011 09:30 AM before Judge William C Griesbach. (cav) |
| 04/26/2011 | 57 | Minute Entry for proceedings held before Judge William C Griesbach: Telephone Scheduling Conference held on 4/26/2011. The Court directs clerk to change name of respondent as per the Court's 56 order of 4/22/2011. Evidentiary Hearing set for 6/23/2011 09:00 AM before Judge William C Griesbach. Parties are to disclose witnesses for the hearing on or before 6/1/2011. The Court directs a writ to be arranged for Mr. Ray's appearance at hearing. (Tape #042611) (mec) |
| 04/26/2011 | | NOTICE of Hearing: Evidentiary Hearing set for 6/23/2011 09:00 AM before Judge William C Griesbach. (cc: all counsel)(mec) |
| 04/26/2011 | 58 | ORDER FOR WRIT OF HABEAS CORPUS signed by Judge William C Griesbach on April 26, 2011. (Attachments: # 1 Writ Issued) (cc: all counsel)(mec) |
| 04/27/2011 | | Original sealed writ and copy of order 58 sent via U.S. Mail to Waupun Correctional Institution - Records Dept. as per their direction. Copy of writ and order also provided to U.S. Marshal. (mec) |
| 05/20/2011 | 59 | LETTER from Jeetander Dulani *Request to Reschedule Evidentiary Hearing*. (Dulani, Jeetander) |
| 05/23/2011 | | NOTICE of Electronic Filing Error to Jeetander T Dulani re 59 Letter. All documents should contain an electronic signature (e.g., s/ Jeetander T. Dulani). Electronically filed documents should be extracted from a word-processing program and not scanned, whenever possible. This document does not need to be re-filed. Please refer to the policies and procedures for electronic case filing found at www.wied.uscourts.gov. (tlf) |
| 05/23/2011 | | TEXT ONLY ORDER GRANTING 59 Letter requesting rescheduling of evidentiary hearing/witness disclosure date, signed by Judge William C Griesbach on 05/23/2011. The Clerk will contact the parties to reschedule the dates (cc: all counsel)(Griesbach, William) |
| 05/23/2011 | | NOTICE of RESCHEDULED Hearing: Evidentiary Hearing rescheduled to 7/28/2011 09:00 AM before Judge William C Griesbach. Witness disclosure due by 7/7/2011.(cc: all counsel)(tlf) |
| 05/24/2011 | 60 | ORDER FOR WRIT OF HABEAS CORPUS signed by Judge William C Griesbach on 5/23/2011. (cc: all counsel)(tlf) (Attachments: # 1 Writ Issued) (tlf). |
| 05/24/2011 | | Original Writ of Habeas Corpus and copy of Order 60 sent via U.S. Mail to Waupun Correctional Institution - Records Dept, per their instruction. (cc: US Marshal Service) (tlf) |
| 07/07/2011 | 61 | *Witness and* Exhibit List by William Pollard. (Attachments: # 1 Certificate of Service for exhibit and witness list)(Lloyd, Katherine) |
| 07/15/2011 | 62 | Joint MOTION for Telephone appearances by witnesses by William Pollard. (Attachments: # 1 Certificate of Service)(Lloyd, Katherine) |
| 07/18/2011 | | TEXT ONLY ORDER GRANTING 62 Joint MOTION for Telephone appearances by witnesses filed by William Pollard, signed by Judge William C. Griesbach on 07/18/2011. Witnesses Lynn Martin and John Nedbal, employees of theNew Lisbon Correctional Institution, and Michelle Highley, an employee ofthe Green Bay |

| | | Correctional Institution, are approved to appear by telephone at the July 28, 2011, evidentiary hearing. (cc: all counsel)(Griesbach, William) |
|---|---|---|
| 07/20/2011 | 63 | NOTICE of Appearance by Katherine Desmond Lloyd on behalf of William Pollard. Attorney(s) appearing: Katherine D. Lloyd, Aaron R. O'Neil (Lloyd, Katherine) |
| 07/22/2011 | 64 | NOTICE of Appearance by Jeetander T Dulani on behalf of Elliot Don Ray. Attorney(s) appearing: Jeetander T. Dulani, Thomas C. Hill (Dulani, Jeetander) |
| 07/28/2011 | 65 | Minute Entry for proceedings held before Judge William C Griesbach: Evidentiary Hearing held on 7/28/2011. The Court takes matter under advisement. (Tape #072811) (mec) |
| 07/28/2011 | 66 | EXHIBITS received for William Pollard, Elliot Don Ray. Exhibit list filed. (Attachments: # 1 Exhibit List) (mec) |
| 08/23/2011 | 67 | FINDINGS OF FACT AND CONCLUSIONS OF LAW AND ORDER DISMISSING § 2254 MOTION FOR RELIEF, signed by Judge William C. Griesbach on 08/23/2011. The Clerk is directed to enter judgment dismissing the action on the ground that the petition was not filed within the time allowed under 28 U.S.C. § 2244(d)(1). (cc: all counsel)(Griesbach, William) |
| 08/24/2011 | 68 | JUDGMENT entered by Deputy Clerk; approved by Judge William C Griesbach on 08/24/2011. (cc: all counsel)(aw) |
| 09/20/2011 | 69 | NOTICE OF APPEAL as to 68 Judgment, 67 Findings of Fact & Conclusions of Law, Order,, by Elliot Don Ray. Filing Fee PAID $455, receipt number 0757-1362934 (cc: all counsel) (Dulani, Jeetander) |
| 09/20/2011 | 70 | Docketing Statement by Elliot Don Ray re 14 Notice of Appeal, 69 Notice of Appeal, 22 Notice of Appeal (cc: all counsel) (Dulani, Jeetander) |
| 09/20/2011 | 71 | SEVENTH CIRCUIT TRANSCRIPT INFORMATION SHEET. Transcript request for evidentiary hearing held on 7/28/2011 before Judge William C Griesbach. (Attachments: # 1 Transcript Request Form)(tlf) |
| 09/28/2011 | 72 | 7th Circuit Information Sheet re: 69 Notice of Appeal (aw) |
| 09/28/2011 | 73 | Attorney Cover Letter re: 69 Notice of Appeal (aw) |
| 09/28/2011 | 74 | Transmission of Notice of Appeal and Docket Sheet to US Court of Appeals re 69 Notice of Appeal (aw) |
| 09/29/2011 | 75 | ORDER GRANTING Certificate of Appealability; signed by Judge William C Griesbach on 09/29/2011. (cc: all counsel)(Griesbach, William) |

# UNITED STATES COURT OF APPEALS FOR THE SEVENTH CIRCUIT



Everett McKinley Dirksen United States Courthouse
Room 2722 - 219 S. Dearborn Street
Chicago, Illinois 60604

Office of the Clerk
Phone: (312) 435-5850
www.ca7.uscourts.gov

## NOTICE OF CASE OPENING

September 30, 2011

| | |
|---|---|
| No.: 11-3228 | ELLIOT D. RAY,<br>Petitioner - Appellant<br><br>v.<br><br>WILLIAM POLLARD,<br>Respondent - Appellee |

**Originating Case Information:**

District Court No: 1:07-cv-00190-WCG
Eastern District of Wisconsin
District Judge William C. Griesbach
Clerk/Agency Rep Jon W. Sanfilippo

Case date filed: 09/30/2011
Case type: pr/st
Fee status: Paid
Date of Judgment: 08/23/2011
Date NOA filed: 09/20/2011

The above-captioned appeal has been docketed in the United States Court of Appeals for the Seventh Circuit.

**Deadlines:**

| Appeal No. | Filer | Document | Due Date |
|---|---|---|---|
| 11-3228 | Elliot D. Ray | Transcript information sheet | 10/14/2011 |
| 11-3228 | Elliot D. Ray | Appellant's brief | 11/09/2011 |

A-35

**NOTE:**This notice is issued to counsel of record, in furtherance of the revised *Circuit Rule 3(d)*, to provide necessary information regarding this appeal. Please verify this notice for accuracy. Counsel are encouraged to provide a fax and/or e-mail address to the court. If any corrections are necessary, please indicate those corrections on this notice and return it to the Clerk's Office within ten (10) days.

**THIS NOTICE SHALL NOT ACT AS A SUBSTITUTE FOR MOTIONS FOR NON-INVOLVEMENT / SUBSTITUTION OF COUNSEL. COUNSEL ARE STILL REQUIRED TO FILE THE APPROPRIATE MOTIONS.** Important Scheduling Notice!

Notices of hearing for particular appeals are mailed shortly before the date of oral argument. Criminal appeals are scheduled shortly after the filing of the appellant's main brief; civil appeals after the filing of the appellee's brief. If you foresee that you will be unavailable during a period in which your particular appeal might be scheduled, please write the clerk advising him of the time period and the reason for such unavailability. Session data is located at http://www.ca7.uscourts.gov/cal/calendar.pdf. Once an appeal is formally scheduled for a certain date, it is very difficult to have the setting changed. See Circuit Rule 34(e).

form name: c7_Docket_Notice(form ID: 108)

A-36

# UNITED STATES COURT OF APPEALS FOR THE SEVENTH CIRCUIT



Everett McKinley Dirksen United States Courthouse
Room 2722 - 219 S. Dearborn Street
Chicago, Illinois 60604

Office of the Clerk
Phone: (312) 435-5850
www.ca7.uscourts.gov

## NOTICE OF DOCKETING - Short Form

September 30, 2011

**To:**     Jon W. Sanfilippo
            District/Bankruptcy Clerk

The below captioned appeal has been docketed in the United States Court of Appeals for the Seventh Circuit:

| |
|---|
| Appellate Case No: 11-3228 |
| Caption:<br>ELLIOT D. RAY,<br>Petitioner - Appellant |
| v. |
| WILLIAM POLLARD,<br>Respondent - Appellee |
| District Court No: 1:07-cv-00190-WCG<br>District Judge William Griesbach<br>Clerk/Agency Rep Jon Sanfilippo<br><br>Date NOA filed in District Court: 09/20/2011 |

If you have any questions regarding this appeal, please call this office.

form name: c7_Docket_Notice_short_form(form ID: 188)

A-37

**General Docket**
**Seventh Circuit Court of Appeals**

| | |
|---|---|
| **Court of Appeals Docket #:** 08-2825 | **Docketed:** 07/22/2008 |
| **Nature of Suit:** 3530 Habeas Corpus | **Termed:** 01/21/2010 |
| Elliot Ray v. Ana Boatwright | |
| **Appeal From:** Eastern District of Wisconsin | |
| **Fee Status:** In Forma Pauperis | |

**Case Type Information:**
   1) prisoner
   2) state
   3) habeasCorpusCaGranted

**Originating Court Information:**
   **District:** 0757-1 : 1:07-cv-00190-WCG
   **Trial Judge:** William C. Griesbach, District Court Judge
   **Date Filed:** 02/28/2007

| | |
|---|---|
| **Date Order/Judgment:** | **Date NOA Filed:** |
| 07/07/2008 | 07/18/2008 |

**Prior Cases:**
   None

**Current Cases:**
   None

---

| | |
|---|---|
| ELLIOT D. RAY (State Prisoner: #363862)<br>    Petitioner - Appellant | Jeetander T. Dulani, Attorney<br>Direct: 202-663-8383<br>[COR LD NTC CJA Appointment]<br>PILLSBURY WINTHROP SHAW PITTMAN LLP<br>2300 N. Street N.W.<br>Washington, DC 20037-1122 |
| v. | |
| ANA BOATWRIGHT<br>    Respondent - Appellee | Katherine D. Lloyd, Attorney<br>Direct: 608-266-7323<br>[COR LD NTC Government State]<br>OFFICE OF THE ATTORNEY GENERAL<br>Wisconsin Department of Justice<br>17 W. Main Street<br>P.O. Box 7857<br>Madison, WI 53707-7857 |

A-38

| 07/22/2008 | 1<br>28 pg, 825.62 KB | State prisoner's habeas corpus case docketed. Certificate of Appealability granted 07/22/2008. IFP. Appellant's brief due on or before 09/02/2008 for Elliot D. Ray. Docketing Statement due for Appellant Elliot D. Ray by 07/25/2008. Transcript information sheet due by 08/05/2008. [1] [08-2825] (ER) |
|---|---|---|
| 08/06/2008 | 2<br>2 pg, 83.15 KB | ORDER: Appellant Elliot D. Ray is directed to file the overdue Docketing Statement within 14 days from the date of this Rule to Show Cause. [2] CC Docketing statement response due for Appellant Elliot D. Ray by 08/20/2008. [DS] |
| 08/14/2008 | 3<br>4 pg, 82.14 KB | Docketing statement filed by Appellant Elliot D. Ray. [6049462][3] [08-2825] (KL) |
| 09/17/2008 | 4<br>2 pg, 81.98 KB | ORDER: Appellant Elliot D. Ray is directed to showcause as to why this appeal should not be dismissed for lack of prosecution pursuant to C. R. 31(c)(2). RT [4] Briefing is SUSPENDED pending further court order. Response to Rule to Showcause due for Appellant Elliot D. Ray by 10/01/2008 [08-2825] (RT) |
| 10/01/2008 | 5<br>2 pg, 72.31 KB | Prose motion filed by Appellant Elliot D. Ray for appointment of counsel. [5] [08-2825] (JK) |
| 10/01/2008 | 6<br>2 pg, 42.19 KB | Prose motion filed by Appellant Elliot D. Ray to extend time to file appellant's brief. [6] [08-2825] (AD) |
| 10/01/2008 | 7<br>2 pg, 45 KB | Filed Showcause Response by Elliot D. Ray to order to show cause. [4]. [6060575] [7] [08-2825] (AD) |
| 10/06/2008 | 8<br>1 pg, 93.74 KB | ORDER: On consideration of the response to the Rule to Show Cause filed 10/01/2008 by , IT IS ORDERED that the Rule to Show Cause is SUSPENDED pending the timely filing of a brief by the party(s). JKL [6] Appellant's brief due on or before 10/22/2008 for Elliot D. Ray. Appellee's brief due on or before 11/21/2008 for Ana Boatwright. Appellant's reply brief, if any, is due on or before 12/05/2008 for Appellant Elliot D. Ray. [6061337] [08-2825] (AM) |
| 10/08/2008 | 9<br>1 pg, 82.4 KB | ORDER: The court, on its own motion, orders that briefing is SUSPENDED pending a ruling on pro se motion for appointment of counsel. EF [6062692] [08-2825] (AM) |
| 10/09/2008 | 10<br>2 pg, 79.5 KB | Notice to the District Court to transmit the record on appeal. [6063128] Record on Appeal due by 11/10/2008 [08-2825] (SP) |
| 10/17/2008 | 11<br>2 pg, 402.69 KB | Attorney J. B. Van Hollen for Ana Boatwright in 08-2825 terminated and added Attorney(s) Katherine D. Lloyd for party(s) Appellee Ana Boatwright, in case 08-2825 per appearance form. Appearance Form filed by Attorney(s) Katherine D. Lloyd for party(s) Appellee Ana Boatwright, in case 08-2825. [08-2825] (JLC) |
| 10/20/2008 | | Original record on appeal filed. Contents of record : 1 vol. pleadings; [6065202-1] [08-2825] (GW) |
| 11/13/2008 | 12<br>1 pg, 135.91 KB | Order issued GRANTING motion for appointment of counsel. A separate order will follow naming counsel. [5] MXF [12] [08-2825] (JLC) |
| 12/03/2008 | 13<br>1 pg, 115.41 KB | ORDER: Pursuant to this court's order of November 13, 2008, attorney John A. Sholar, Jr., Winston and Strawn, 35 W. Wacker Drive, Chicago, IL 60601, is appointed to represent petitioner-appellant Elliot Ray pursuant to the provisions of the Criminal Justice Act. Counsel is directed to contact the petitioner-appellant immediately. Briefing will proceed as follows: Appellant's brief due on or before 03/03/2009 for Elliot D. Ray. Appellee's brief due on or before 04/02/2009 for Ana Boatwright. Appellant's reply brief, if any, is due on or before 04/16/2009 for Appellant Elliot D. Ray. [13] [08-2825] (AD) |
| 12/09/2008 | 14<br>2 pg, 92.66 KB | Record on appeal withdrawn by John A. Sholar, Jr., Phone: 312/558-5600. Contents withdrawn: 1 vol. pleadings;. [14] [08-2825] (SP) |
| 02/11/2009 | 15<br>4 pg, 63.65 KB | Filed motion by attorney John A. Sholar, Jr for Elliot D. Ray to withdraw as counsel and to substitute counsel. [6097062] [08-2825] (AM) |
| 02/12/2009 | 16<br>1 pg, 36.68 KB | Attorney John A. Sholar Jr. for Elliot D. Ray in 08-2825 terminated and added Attorney(s) Jeetander T. Dulani for party(s) Appellant Elliot D. Ray, in case 08-2825 per disclosure statement. Disclosure statement filed by Attorney(s) Jeetander T. Dulani for party(s) Appellant Elliot D. Ray, in case 08-2825. [08-2825] (SM) |
| 02/12/2009 | 17<br>4 pg, 72.74 KB | Motion filed by Appellant Elliot D. Ray to extend time to file appellant's brief. [17] [08-2825] (AM) |
| 02/13/2009 | 18<br>1 pg, 83.39 KB | Order issued GRANTING motion to extend time to file appellant's brief. [17] Appellant's brief due on or before 04/02/2009 for Elliot D. Ray. Appellee's brief due on or before 05/04/2009 for Ana Boatwright. Appellant's reply brief, if any, is due on or before 05/18/2009 for Appellant Elliot D. Ray. CMD [18] [08-2825] (SM) |

| | | |
|---|---|---|
| 02/18/2009 | 19<br>1 pg, 73.79 KB | ORDER re: (1) Motion for leave to withdraw a c ounsel for petitioner-appellant and substitute counsel. The motion to withdraw and substitute counsel is GRANTED. Attorney Jeetander T. Dulani, Winston and Strawn, 35 W. Wacker Drive, Chicago, IL 60601, is appointed to represent petitioner-appellant Elliot D. Ray pursuant to the provisions of the Criminal Justice Act. Briefing shall proceed in accordance with this court's order of 2/13/09. [15] [15] [19] [08-2825] (KL) |
| 03/12/2009 | 20<br>4 pg, 77.09 KB | Motion filed by Appellant Elliot D. Ray to extend time to file appellant's brief. [20] [08-2825] (AM) |
| 03/13/2009 | 21<br>1 pg, 94.11 KB | Order issued GRANTING motion to extend time to file appellant's brief. [20] Appellant's brief due on or before 05/04/2009 for Elliot D. Ray. Appellee's brief due on or before 06/03/2009 for Ana Boatwright. Appellant's reply brief, if any, is due on or before 06/17/2009 for Appellant Elliot D. Ray. CMD [21] [08-2825] (AM) |
| 04/27/2009 | 22<br>5 pg, 106.48 KB | Motion filed by Appellant Elliot D. Ray to extend time to file appellant's brief. [22] [08-2825] (AM) |
| 04/28/2009 | 23<br>1 pg, 94.47 KB | Order issued GRANTING motion to extend time to file appellant's brief. [22] Appellant's brief due on or before 06/03/2009 for Elliot D. Ray. Appellee's brief due on or before 07/06/2009 for Ana Boatwright. Appellant's reply brief, if any, is due on or before 07/20/2009 for Appellant Elliot D. Ray. CMD [23] [08-2825] (AM) |
| 06/03/2009 | 24<br>63 pg, 1.7 MB | 15 copies Appellant's brief filed by Appellant Elliot D. Ray. [6134746] [24] Disk Filed. [08-2825] (CO) |
| 06/03/2009 | 25 | Filed 10 copies Appendix vol,s I-III by Appellant Elliot D. Ray. [6134747] [08-2825] (CO) |
| 06/03/2009 | 26<br>3 pg, 80.91 KB | Motion filed by Appellant Elliot D. Ray to take judicial notice of the trial transcript in prior related state court proceedings. [26] [08-2825] (AM) |
| 06/03/2009 | 27<br>2 pg, 96.11 KB | Record on appeal returned by John Sholar, Phone: 312/558-5600. Contents returned: 1 vol. pleadings;. [27] [08-2825] (CO) |
| 06/11/2009 | 28<br>1 pg, 79.46 KB | ORDER: The following motion(s) and/or document(s) shall be taken with the case for determination by the merits panel: CONSENT MOTION TO TAKE JUDICIAL NOTICE OF THE TRIAL TRANSCRIPT IN PRIOR RELATED STATE COURT PROCEEDINGS. The clerk of the court shall distribute a copy of this order, the motion, and any response to the motion to the merits panel. KLR [6136477] [08-2825] (CD) |
| 07/01/2009 | 29<br>7 pg, 125.44 KB | Motion filed by Appellee Ana Boatwright to extend time to file appellee's brief. [29] [08-2825] (CD) |
| 07/02/2009 | 30<br>2 pg, 90.52 KB | Order issued GRANTING motion to extend time to file appellee's brief. [29] Appellee's brief due on or before 07/24/2009 for Ana Boatwright. Appellant's reply brief, if any, is due on or before 08/07/2009 for Appellant Elliot D. Ray. CMD [30] [08-2825] (CD) |
| 07/27/2009 | 31<br>32 pg, 158.17 KB | 15 copies Appellee's brief filed by Appellee Ana Boatwright. [6147600] [31] Disk Filed. [08-2825] (LB) |
| 08/07/2009 | 32<br>16 pg, 43.02 KB | 15 copies Appellant's reply brief filed by Appellant Elliot D. Ray. [6150794] [32] Electronically Transmitted. [08-2825] (RS) |
| 10/07/2009 | 33<br>2 pg, 81.58 KB | Argument set for Thursday, November 5, 2009, at 10:30 a.m. in the Main Courtroom, Room 2721. Each side limited to 10 minutes. [08-2825] (LB) |
| 10/22/2009 | | Received argument confirmation per argument card for Attorney Jeetander T. Dulani for Appellant Elliot D. Ray. [6170300-1] [08-2825] (LJ) |
| 10/28/2009 | | Received argument confirmation per argument card for Attorney Katherine D. Lloyd for Appellee Ana Boatwright. [6171469-1] [08-2825] (LJ) |
| 11/05/2009 | 34 | Case heard and taken under advisement by panel: William J. Bauer, Circuit Judge; Daniel A. Manion, Circuit Judge and Ann Claire Williams, Circuit Judge. [6173839] [08-2825] (SMP) |
| 11/05/2009 | 35 | Case argued by Jeetander T. Dulani for Appellant Elliot D. Ray and Katherine D. Lloyd for Appellee Ana Boatwright. [6173840] [08-2825] (SMP) |
| 11/19/2009 | 36<br>2 pg, 29.57 KB | Filed Appellant Elliot D. Ray Citation of Additional Authority, per Circuit Rule 28(e). DIST. [6177013] [08-2825] (RS) |
| 01/21/2010 | 37<br>12 pg, 84.75 KB | Filed opinion of the court by Judge Bauer. REVERSED & REMANDED. William J. Bauer, Circuit Judge; Daniel A. Manion, Circuit Judge and Ann Claire Williams, Circuit Judge. [08-2825] (ER) |
| 01/21/2010 | 38<br>1 pg, 79.51 KB | ORDER: Final judgment filed per opinion. With costs: no. [38] [08-2825] (ER) |

| 02/03/2010 | 📄 39<br>33 pg, 1.08 MB | Filed 30c Petition for Rehearing and Petition for Rehearing Enbanc by Appellee Ana Boatwright. Dist. [08-2825] (KL) |
|---|---|---|
| 02/04/2010 | 📄 40<br>1 pg, 87.59 KB | Sent clerk's copy of request to Appellant Elliot D. Ray requesting 30 copies of their answer to the Petition for Rehearing and Petition for Rehearing Enbanc filed by Appellee Ana Boatwright on 02/03/2010. Answer to Petition for Rehearing due for Appellant Elliot D. Ray by 02/18/2010. [40]. [08-2825] (AM) |
| 02/18/2010 | 📄 41<br>18 pg, 732.67 KB | Filed 30c Answer to Petition for Rehearing and Petition for Rehearing Enbanc by Appellant Elliot D. Ray, per order. Dist. [08-2825]--[Edited 02/22/2010 by JAD] (AD) |
| 04/01/2010 | 📄 42<br>12 pg, 111.32 KB | AMENDED Opinion issued by Judge Bauer. Original Opinion issued on 01/21/2010. William J. Bauer, Circuit Judge; Daniel A. Manion, Circuit Judge and Ann Claire Williams, Circuit Judge. [42] [08-2825] (SM) |
| 04/01/2010 | 📄 43<br>2 pg, 633.74 KB | ORDER: Appellee Ana Boatwright Petition for Rehearing and Petition for Rehearing Enbanc is DENIED. This court's opinion dated January 21, 2010, is amended in a separately filed opinion released today. (Circuit Judge Joel M. Flaum did not participate in the consideration of this petition for rehearing.) [43] [08-2825]--[Edited 04/01/2010 by MAN] (MAN) |
| 04/09/2010 | 📄 44<br>2 pg, 81.54 KB | Mandate issued.. Record to be returned later 1 vol. pleadings. [08-2825] (JC) |
| 04/09/2010 | 📄 | FOR COURT USE ONLY: Certified copy of 01/21/2010 Final Order with Mandate sent to the District Court Clerk. [6212106-2] [08-2825] (JC) |
| 04/09/2010 | 📄 45<br>2 pg, 80.41 KB | Original record returned to the District Court. Entire record returned consisting of 1 vol. pleadings. [08-2825] (JC) |
| 07/07/2010 | 📄 46<br>1 pg, 10.78 KB | Filed notice from the Supreme Court of the filing of a Petition for Writ of Certiorari. 10-31 [46] [6233756] [08-2825] (CD) |
| 11/17/2010 | 📄 47<br>1 pg, 15.03 KB | Filed order from the Supreme Court DENYING the Petition for Writ of Certiorari. 10-31. [47] [6266396] [08-2825] (FP) |

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

April 1, 2010

**Before**

WILLIAM J. BAUER, *Circuit Judge*

DANIEL A. MANION, *Circuit Judge*

ANN CLAIRE WILLIAMS, *Circuit Judge*

| | |
|---|---|
| No. 08-2825 | |
| | Appeal from the United States District |
| ELLIOT D. RAY, | Court for the Eastern District |
| *Petitioner-Appellant,* | of Wisconsin. |
| *v.* | No. 1:07-cv-00190-WCG |
| ANA BOATWRIGHT, | William C. Griesbach, |
| *Respondent-Appellee.* | *Judge.* |

## A M E N D E D   O R D E R

On consideration of the petition for rehearing and rehearing *en banc* filed in the above-captioned case by respondent-appellee on February 3, 2010, and the response filed by petitioner-appellant on February 18, 2010, no judge in active service has requested a vote on the petition for rehearing *en banc*[1] and all of the judges on the original panel have voted to deny the petition for rehearing. It is, therefore, **ORDERED** that the petition for rehearing and rehearing *en banc* is **DENIED**.

**IT IS FURTHER ORDERED** that this court's opinion dated January 21, 2010, is amended in a separately filed opinion released today.

---

[1] Circuit Judge Joel M. Flaum did not participate in the consideration of this petition for rehearing.

In the

# United States Court of Appeals

### For the Seventh Circuit

No. 08-2825

ELLIOT D. RAY,

*Petitioner-Appellant,*

*v.*

ANA BOATWRIGHT,

*Respondent-Appellee.*

Appeal from the United States District Court
for the Eastern District of Wisconsin.
No. 1:07-cv-00190-WCG—**William C. Griesbach**, *Judge.*

ARGUED NOVEMBER 5, 2009—DECIDED JANUARY 21, 2010
AMENDED APRIL 1, 2010

Before BAUER, MANION and WILLIAMS, *Circuit Judges.*

BAUER, *Circuit Judge.* Elliot Ray appeals from the district court's denial of his petition for a writ of habeas corpus under 28 U.S.C. § 2254. Because it was error for the state court to admit the co-actors' statements through the police detective's testimony at trial, violating Ray's right of confrontation, we reverse and remand.

Case: 08-2825   Document: 8   Filed: 04/01/2010   Pages: 12

## I. BACKGROUND

Ray was one of several gunmen charged in Wisconsin state court for a retaliatory shooting in which Rita Martinez, an eleven-year-old girl, was killed, and two people were injured on 29th Street in Milwaukee, Wisconsin. Ray claims that on the night of the shooting, he changed his mind about accompanying his friends to 29th Street, told his friends that he was not going with them, and returned to his friend's house on 33rd Street. Ray maintains that he learned that Martinez had been shot near 29th Street from a television news report.

At trial, the State called Detective Daniel Phillips to testify about the homicide investigation and his interview with Ray at the police station. The detective testified about Ray's signed statement that was written toward the end of Ray's interview, where Ray talked about the night of shootings at issue, as well as the events that transpired the night before the shootings. Ray's App. at 642. In testifying, the detective primarily read from Ray's statement, including the portion where he told Ray that two of his co-actors' had made statements to implicate Ray in the shootings. We note that the detective testifying to the statements made by others is inadmissible hearsay. The detective testified as follows:

> Ray states that he too then began walking from 33rd Street to 29th Street to go shoot along with the rest of them, but Ray states when he got to North Avenue he thought "fuck it" and turned around and went back to [his friend's] house.

No. 08-2825                                                    3

Ray was then confronted with numerous statements made by co-actors that they were present shooting on 29th Street and so was Ray.

Ray then stated "those stupid niggers shouldn't be talking and they can't talk for me."

*When confronted with statements by [Miriam Myles] that Ray was shooting a nine-millimeter on 29th Street [and] in a statement by Sylvester Townsend . . . that Ray had a .45-caliber pistol[,] Ray then said "tell me which gun killed the girl and I'll tell you everything."*

Ray's App. at 653. (Emphasis added.)

Ray's attorney did not object to the detective's testimony regarding the above-referenced statements. Neither Miriam Myles nor Sylvester Townsend testified at trial.

A jury returned guilty verdicts for one count of first-degree reckless homicide, party to a crime, and two counts of first-degree recklessly endangering safety. Ray's App. at 38. He was also convicted of being a felon in possession of a firearm. *Id.*

On direct appeal, Ray raised five issues, including a claim that his confrontation clause rights were violated when the detective was allowed to testify regarding statements made by Ray's co-actors, when those co-actors were not witnesses at trial. The state appellate court ignored this issue and solely focused on whether there was a hearsay violation, despite the detective using the phrase, "Ray was then confronted" in his testimony. The state appellate court concluded that the detective's references to the co-actors' statements were not hearsay

A-45

No. 08-2825

because they were not offered to prove "the truth of the matter" contained in the statements but rather "to show Ray's reaction to his co-actors' statements placing him at the scene, shooting a gun—a reaction implicating him in the revenge-seeking conspiracy." Ray's App. at 40-42. The state supreme court denied Ray's petition for review.

Ray then sought post-conviction relief in state court under Wis. Stat. § 974.06. He was denied relief. Ray's App. at 95.

Ray filed two separate pro se petitions for writ of habeas corpus in the federal district court. The district court denied both of Ray's petitions pursuant to Rule 4 of the Rules Governing Section 2254 Cases, finding that he set forth no cognizable constitutional or federal law claims. Ray's App. at 51-58, 94-100. Thereafter, the district court granted Ray's request for a certificate of appealability to address whether the trial court's admission of the statements by non-testifying co-actors through the testimony of the detective ran afoul of the confrontation clause.


## II. DISCUSSION

Under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), an application for a writ of habeas corpus may not be granted unless adjudication of the claim in state court "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C.

§ 2254(d)(1). "[S]tate-court judgments must be upheld unless, after the closest examination of the state-court judgment, a federal court is firmly convinced that a federal constitutional right has been violated." *Williams v. Taylor*, 529 U.S. 362, 388 (2000).

The Government seeks to frame the issue in this case as one involving the hearsay rule; it is not. As noted above, the hearsay violation is beyond dispute. The issue, then, involves the violation of the Sixth Amendment of the Constitution which says that: "The accused shall enjoy the right . . . to be confronted with the witnesses against him . . . ." The Supreme Court has held that the guarantee, which is extended against the states by the Fourteenth Amendment, includes the right to cross-examine witnesses. *See Pointer v. Texas*, 380 U.S. 400, 404 (1965). And this fundamental constitutional right is quite properly an almost total ban on the introduction of accusations against the accused by persons not present for cross-examination.

## A.  Whether There Was A Confrontation Clause Issue

The first issue we must address is whether the detective's testimony concerning the statements made by the co-actors violated Ray's right of confrontation. The government contends that the co-actors' statements were used "not as substantive evidence of Ray's guilt, but instead to 'give the context of' Ray's reaction to those statements." Appellee's Brief at 22. Because the statements were not hearsay, the government maintains that they do not run afoul of the confrontation clause. *Id.*

at 23. The government likens this case to both *Tennessee v. Street*, 471 U.S. 409, 417 (1985) and *Lee v. McCaughtry*, 892 F.3d 1318, 1325 (7th Cir. 1990). In *Street*, the Supreme Court held that there was no confrontation clause violation when the State introduced the co-actor's confession, because it was introduced for the non-hearsay purpose of rebutting the defendant's testimony that his own confession was a coerced "copy" of the co-actor's statement. 471 U.S. at 417. In *Lee*, we held that there was no confrontation clause violation in admitting into evidence a tape recording that included the state's attorney's narration of the accomplice's accusation in the recorded interview with the defendant, because it was used to place into context for the jury the metamorphosis of the defendant's accounts of events, i.e., that the defendant changed his story after hearing the accomplice's accusation. 892 F.3d at 1325.

The government maintains that the state court's conclusion that the co-actors' statements were introduced to give context to Ray's reaction to them (i.e., a guilty reaction), not to show their underlying truth, is a reasonable conclusion and a reasonable application of federal law. *Id.* at 24.

We disagree. The confrontation clause has been invoked to prevent, even in a joint trial, the admission of a confession by a co-defendant that implicates the other accused, even if the trial judge provides a limiting instruction. *See Bruton v. United States*, 391 U.S. 123, 127-28 (1968). While the method of presentation of the accusations in this case shows lively imagination on the part of the

No. 08-2825                                                    7

prosecution, it nevertheless runs afoul of the United States Constitution. Here, the evidence presented by the prosecution delivered to the jury statements by named co-actors, not available for cross-examination, accusing Ray of the very crimes with which he stood charged. However cleverly presented, the evidence was a clear violation of Ray's constitutional right of confrontation. While the government asserts that "a number of witnesses placed Ray among the group of people involved in the shooting" (Appellee's Brief at 5-6), none of these witnesses could place Ray at the scene of the shootings, with a weapon in his hand. To accept the government's position that the statements were offered only to create the setting for Ray's response, and therefore admissible, would set the stage to eliminate, in most cases, the confrontation right "enjoyed by the accused."

*Street* is factually distinguishable because there, the co-actor's confession was introduced in rebuttal to refute the defendant's claim of coercion, where here, the detective testified to the co-actors' statements during the State's case-in-chief. The court in *Street* also instructed the jury that the co-actor's statement was to "be considered by you for rebutable [sic] purposes only, and you are not to consider the truthfulness of the statement in any way whatsoever." *Id.* at 412. The court in this case issued no limiting instruction.

*Lee* is also distinguishable because we do not find that Ray changed his version of events after hearing the accusations of the co-actors. Further, the trial court in *Lee* also provided a limiting instruction whereas none was provided here.

A-49

We find that the detective testifying to the co-actors'
statements proved far more than any reaction that
Ray had during his interview. Ray did not have the
opportunity to cross-examine these co-actors at trial. Ac-
cordingly, these statements violated Ray's right of con-
frontation.

## B. Whether These Statements Were Admissible Under *Roberts* And *Lilly*

Because Ray's conviction was finalized before *Crawford
v. Washington,* 541 U.S. 36 (2004), was decided, Ray's
confrontation clause claim should be analyzed "according
to *Roberts* and *Lilly,* the clearly established Supreme
Court precedent at the time of the state court decisions."
*Bintz v. Bertrand,* 403 F.3d 859, 867 (7th Cir. 2005).
Under these cases, the veracity of statements from non-
testifying witnesses is sufficiently dependable to allow
the untested admission of such statements against an
accused at trial when (1) "the evidence falls within a
firmly rooted hearsay exception" or (2) it contains "partic-
ularized guarantees of trustworthiness" such that ad-
versarial testing would be expected to add little, if any-
thing, to the statements' reliability. *Ohio v. Roberts,* 448
U.S. 56, 65-66 (1980); *Lilly v. Virginia,* 527 U.S. 116, 124-25
(1999).

The government does not argue, nor do we find, that
these statements fall within a hearsay exception.

Additionally, the government does not argue that these
statements contain particularized guarantees of trust-

worthiness. As this Court interprets the reasoning of the plurality in *Lilly*, these guarantees of trustworthiness "must be inherent in the circumstances of the testimony itself; the fact that other evidence corroborates the testimony in question does not suffice." *United States v. Castelan*, 219 F.3d 690, 695 (7th Cir. 2000). There is a presumption of unreliability that attaches to a co-defendant's confession, see *Lee v. Illinois*, 476 U.S. 530, 543 (1986), "[i]t is highly unlikely that the presumptive unreliability that attaches to accomplices' confessions that shift or spread blame can be effectively rebutted when . . . the government is involved in the statements' production, and when the statements describe past events and have not been subjected to adversarial testing." *Lilly*, 527 U.S. at 137.

Here, the co-actor's statements neither fall "within a firmly rooted hearsay exception", nor do they contain "particularized guarantees of trustworthiness." Therefore, these statements were inadmissible. *See Roberts*, 448 U.S. at 65-66; *Lilly*, 527 U.S. at 124-25.

### C. Whether It Was Harmless Error To Admit These Statements

We have concluded that the hearsay statements were inadmissible. The state does not contend that Ray failed to exhaust his state remedies or procedurally defaulted his constitutional arguments. Accordingly, these arguments are waived. *Lilly v. Gilmore*, 988 F.2d 783, 784-85 (7th Cir. 1993). We must now determine whether the

error in admitting these statements was harmless or whether it had a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993).

In this case, the error in admitting these statements was not harmless. Ray was not able to cross-examine the only witnesses who directly implicated him to being at the scene of the shooting with a weapon in his hand, and who directly refuted Ray's claim that he had withdrawn from the conspiracy at issue. We find this confrontation clause violation seriously affected the fairness of the judicial proceedings, resulted in a decision that was contrary to clearly established federal law, and reverse the district court's opinion.

### D. Whether Ray's Petition Was Timely

The government alternatively argues that Ray's habeas petition should be barred because it was untimely. Under the rules governing AEDPA, a petitioner has one year in which to file a petition for writ of habeas corpus, to begin running "on the date of which the judgment became final by the conclusion of direct review or expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A). The one-year period is tolled during a properly filed post-conviction petition in state court. *See* 28 U.S.C. § 2244(d)(2). Accordingly, Ray had until September 9, 2004 in which to file his petition. The government maintains that Ray failed to provide documentation that he had originally filed his state post-conviction

motion in a timely manner, and discredits Ray's assertion that the Oklahoma prison in which he was housed misplaced the timely-filed motion.

There is no evidence in the record to support the government's assertions. However, this is largely due to the fact that the district court dismissed Ray's petition on the merits before giving the government an opportunity to answer the petition and develop the record. The record currently reflects that Ray served a copy of his pro se post-conviction petition to prison officials on April 27, 2004. Ray's App. at 32, 36. Correspondence between Ray and prison officials alternatively indicate that Ray filed his motion on April 29, 2004. Ray's App. at 32, 34-35, 37. Despite the disparity in the date, these documents provide support for Ray's assertion that he filed his post-conviction petition in a timely manner. However, the government has not yet had a chance to challenge whether the documents Ray placed into the record are authentic; whether the state court petition was ever received by prison officials; whether the papers Ray filed were sufficient under state law to petition for post-conviction relief; or whether the individual to whom Ray allegedly gave his petition was a proper prison authority. Accordingly, we remand this case to the district court so that the government may have an opportunity to develop the record on this issue. If, after the record is fully developed, Ray's petition is determined to be timely, this Court directs the district court to grant the petition for writ of habeas corpus unless the State chooses to retry Ray within 120 days.

Case: 11-3228    Document: 8    Filed: 12/09/2011    Pages: 111

## III. CONCLUSION

For the reasons stated above, we REVERSE the district court and REMAND the case for further proceedings not inconsistent with this opinion.

---

4-1-10

# Supreme Court of the United States
## Office of the Clerk
## Washington, DC  20543-0001

William K. Suter
Clerk of the Court
(202) 479-3011

November 15, 2010

Clerk
United States Court of Appeals for the Seventh
Circuit
219 S. Dearborn Street, Room 2722
Chicago, IL  60604

     Re:  Ana Boatwright, Warden
          v. Elliot D. Ray
          No. 10-31
          (Your No. 08-2825)

Dear Clerk:

     The Court today entered the following order in the above-entitled case:

     The petition for a writ of certiorari is denied.

                  Sincerely,

                  William K. Suter, Clerk

A-55

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

ELLIOT DON RAY,

        Petitioner,

    v.                              Case No. 07-C-190

JIM SCHWOCHERT,

        Respondent.[1]

## ORDER DENYING DISPOSITIVE MOTIONS

On February 28, 2007, Elliot Don Ray filed a petition pursuant to 28 U.S.C. § 2254, asserting that his current confinement violates the Constitution. Concluding that it plainly appeared from the petition and attached exhibits that Ray was not entitled to federal relief, this Court dismissed the petition pursuant to Rule 4 of the Rules Governing Section 2254 Petitions. Ray appealed, and the United States Court of Appeals for the Seventh Circuit reversed, finding that the state courts had unreasonably applied clearly established federal law in admitting the statements of co-actors at Ray's trial through the testimony of a police detective. *See Ray v. Boatwright*, 592 F.3d 793 (7th Cir. 2010). Given this court's summary dismissal of the case, however, Respondent had not had been able to challenge the timeliness of Ray's petition. The Seventh Circuit therefore

---

[1] At the time the case was initially remanded, Ray's custodian was Timothy Lundquist. Ray has recently been transferred to Waupun Correctional Institution at which Jim Schwochert is the acting warden. Jim Schwochert , therefore, is substituted as the named respondent in this action. *See* RULES GOVERNING SECTION 2254 CASES 2(a).

remanded the case to allow Respondent to develop the record on that issue with instructions to grant the petition if it was found to be timely unless the State elected to retry Ray within 120 days.

Following the State's unsuccessful petitions for rehearing before the Seventh Circuit *en banc* and for *certiorari* to the United States Supreme Court, the case is before the Court on Respondent's motion to dismiss the petition as untimely. Ray has also filed a motion for summary judgment in which he argues that the evidence establishes without dispute that his petition was timely. For the reasons set forth herein, both motions will be denied and the Court will conduct an evidentiary hearing on the issue.

## I. BACKGROUND

The Anti-terrorism and Effective Death Penalty Act (AEDPA) of 1996 created a statute of limitations for state prisoners seeking federal habeas corpus relief under 28 U.S.C. § 2254. A state prisoner seeking federal relief under 28 U.S.C. § 2255 must generally file his petition within one year of "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A).

Ray was sentenced on March 29, 2001, and judgment was entered several days later. He appealed his conviction to the Wisconsin Court of Appeals claiming, *inter alia*, that his Sixth Amendment confrontation rights were violated by the admission of statements of non-testifying co-actors. Relying on *Tennessee v. Street*, 471 U.S. 409 (1985), the Wisconsin Court of Appeals concluded that there was no confrontation violation because the statements had been offered so that the jury could understand Ray's responses, not for the truth of the matter asserted, and affirmed his conviction. *State v. Ray*, 2003 WI App. 42U, ¶¶ 4-6. It was that ruling that the United States Court

2

of Appeals found to be an unreasonable application of clearly established federal law more than seven years later when it reversed this Court's dismissal of his § 2254 petition. *Ray*, 592 F.3d at 796.

In any event, after the Wisconsin Court of appeals affirmed his conviction, Ray filed a petition for review with the Wisconsin Supreme Court. The Supreme Court denied his petition on June 12, 2003. Ninety days thereafter, on September 10, 2003, his judgment became final within the meaning of § 2244(d)(1)(A). *See Jones v. Hulick*, 449 F.3d 784, 787 (7th Cir. 2006) ("The time during which a petition for certiorari to the United States Supreme Court can be filed from a decision on direct review is not counted because a decision does not become final until the time for petitioning for certiorari has passed."). The one-year limitation period for a petition seeking relief under § 2254 would therefore have expired one year later on September 10, 2004, unless it was tolled. Ray's § 2254 petition, however, was not filed until February 28, 2007.

A properly filed motion for post-conviction relief in state court tolls AEDPA's one-year habeas statute of limitations, 28 U.S.C. § 2244(d)(2), and Ray did file such a motion pursuant to Wis. Stat. § 974.06. But Respondent contends that Ray did not file his § 974.06 motion with the Circuit Court for Milwaukee County until October 13, 2006, more than two years after his state judgment of conviction became final. By that time, the limitations period for a § 2254 petition had expired. The fact that he subsequently filed a Wis. Stat. § 974.06 motion for post conviction relief does not give rise to a second one-year limitation period. *See Teas v. Endicott*, 494 F.3d 580, 581 (7th Cir. 2007) ("Nothing in § 2244(d) implies that the time is reopened if the state court engages in multiple rounds of review that it calls 'direct.'"). It is on the basis of these facts that Respondent argues Ray's petition is untimely and must be dismissed. (Dkt. 45 at 5-7.)

3

Ray argues in response, however, that under the "prison mailbox rule" he actually filed his § 976.04 motion for post conviction relief well within the one year limitation period. Under the prisoner mailbox rule, a *pro se* prisoner's cause of action is considered filed when the prisoner delivers the pleading to prison officials for mailing. *Houston v. Lack*, 487 U.S. 266, 276 (1988). The rule is based on the fact that unlike other litigants, *pro se* prisoners are unable to personally file or place their court documents in the mail and have no control over delays by prison officials. *Id.*, at 271-72. Federal courts have therefore adopted the rule that "a *pro se* petition for habeas relief is deemed filed for statute of limitations purposes when it is given to the proper prison officials and not when it is actually received by the district court clerk." *Jones v. Bertrand*, 171 F.3d 499, 502 (7th Cir. 1999).

Ray claims that he placed his motion for state post-conviction motion relief, with postage prepaid affixed, in the hands of Ms. Tamara Smith, a social worker at the Diamondback Correctional Facility, on April 27, 2004. Diamondback was a private contract correctional facility located in Oklahoma where Ray was being housed at the time.[2] (Aff. of Elliot Don Ray, Dkt. 48-1, Br. in Supp. of Mot. for S.J., Ex. 1, ¶ 1.) After he handed her his motion, Ray states that Smith handed him in return two receipts: a "CCA Privileged Correspondence Receipt" form, which Smith signed, and a "Certificate of Service by Mail" form, which Ray signed. (Ray Aff. ¶ 2.) Ray was transferred to Green Bay Correctional Institution (GBCI) and returned to Wisconsin three days later on April 30, 2004. (Ray Aff., ¶ 4.)

---

[2] Diamondback was operated by Corrections Corporation of America. Respondent notes that Diamondback shut down its facility in May 2010. Efforts to obtain records from that facility have so far been unsuccessful. (Resp.'s Reply Br. at 3, n.3.)

4

Over the next fourteen months, Ray claims he sent three follow-up letters to Ms. Smith asking her to confirm that she had deposited his motion in the mail. He wrote to Smith from GBCI on June 1 and again on September 9, 2004, and from Columbia Correctional Institution on June 15, 2005. Ray states that Ms. Smith failed to respond to any of his letters, and he finally wrote to the Clerk of the Circuit Court for Milwaukee County on October 4, 2006, from New Lisbon Correctional Institution (NLCI) requesting information on the status of his motion for post conviction relief. (Ray Aff. ¶¶ 5-9, Exs. A-E.) His letter, bearing a crossed out date stamp indicating the letter was received by the Milwaukee County Clerk of Court on October 6, 2006, was returned with a notation that read, "Our records do not show any motion filed in 2004." (Ray Aff., Ex. E.) It was at that point, Ray contends, that he realized his § 974.06 motion for post conviction relief had not been filed. He filed a new motion for post conviction relief on October 13, 2006, which was denied on October 16, 2006.[3] (Ray Aff. ¶ 12.) He again appealed to the Wisconsin Court of Appeals, and while his appeal was still pending, filed his petition for federal relief under § 2254.

Based on this version of the facts, Ray argues that his § 2254 petition was timely. Although his state motion for post conviction relief was not actually filed until more than two years after his judgment of conviction became final, Ray contends that it must be deemed filed as of April 27, 2004, when he placed it in Ms. Smith's hands for mailing to the Clerk of Court for Milwaukee County. That motion remained pending, and thus tolled the running of the one-year limitation period for filing a § 2254 petition for federal habeas relief, until ninety days after the Wisconsin

---

[3] Ray's § 974.06 motion does not appear in the record. Respondent does not dispute that it was "properly filed" as required by 28 U.S.C. § 2244(d)(2).

5

Supreme Court denied his petition for review of the Wisconsin Court of Appeals decision denying it. By that time, Ray had already filed his § 2254 petition, bringing it well within the one-year limitation period.

Respondent offers two arguments in reply. First, Respondent argues that Ray has not shown that he actually handed his motion for state post conviction relief to prison officials within the one-year period of limitations. Although Ray has submitted an affidavit and a number of documents in support of his claim, Respondent argues that his self-serving statements and questionable documents do not establish that he asked Ms. Smith to mail his motion for post conviction relief to the Circuit Court for Milwaukee County before the limitation period expired. Second, Respondent argues that the mailbox rule is a federal rule that applies only to federal filings; it does not apply to Ray's motion for post conviction relief in state court. Because the mailbox rule does not apply to Ray's motion for state post conviction relief, Respondent contends that Ray's claim that he handed his motion to Ms. Smith for mailing on April 27, 2004, is irrelevant. Even if he did hand his motion to Ms. Smith on that date, that would not constitute filing it under state law and thus the one-year limitation period would not have been tolled. Respondent contends that the one-year period therefore expired on September 10, 2004, and since Ray did not file his § 2254 petition on or before that day, it is barred. The Court will address Respondent's second argument first.

## II. ANALYSIS

### A. Application of the Prisoner Mailbox Rule to State Court Filings.

Two cases Ray cites in support of the mailbox rule, *Houston v. Lack* and *Jones v. Bertrand*, involved application of the rule to federal filings. In *Houston*, the Court held that, for purposes of

6

federal appeals, a notice of appeal is deemed timely if it is delivered to prison authorities within the time allowed for appeal. 487 U.S. at 270. In *Jones*, the Court held that a *pro se* prisoner's federal habeas petition is considered timely when it is given to prison officials for mailing within the one-year limitation. 171 F.3d at 502. Respondent notes that neither the Supreme Court nor the Seventh Circuit has expressly held that the rule applies to state court filings and urges this Court to hold that it does not.

There is a split in the circuits over whether the mailbox rule applies to state filings in computing AEDPA's statute of limitations. Those courts that have addressed the issue have either applied the prison mailbox rule to state court filings, or they have interpreted § 2444(d)(2)'s requirement that the state post conviction motion be "properly filed" as synonymous with "filed under state law" and then looked to state law to decide whether it applies. Both the Second and Ninth Circuits have held that *Houston*'s mailbox rule applies to state habeas petitions as well as federal filings for purposes of deciding AEDPA's statute of limitations regardless of whether state law recognizes the rule. *See Fernandez v. Artuz*, 402 F.3d 111, 115 (2nd Cir. 2005) ("New York's rejection of the mailbox rule does not preclude its application by a federal court in tolling a federal statute of limitations."); *Anthony v. Cambra*, 236 F.3d 568, 575 (9th Cir. 2000) ("[T]he mailbox rule applies with equal force to the filing of state as well as federal petitions, because at both times, the conditions that led to the adoption of the mailbox rule are present; the prisoner is powerless and unable to control the time of delivery of documents to the court.") (internal quotes omitted). These holdings are consistent with the sound principle that federal law should govern the interpretation and application of a federal statute of limitations.

7

A-62

The Fifth and Tenth Circuits, on the other hand, look to the law of the state in which the filing is made to decide whether the mailbox rule applies. *See Causey v. Cain*, 450 F.3d 601, 605 (5th Cir.2006) ("[S]tate courts have the right to interpret 'state rules of filing' and are not bound by Houston's construction of federal filing rules."); *Adams v. LeMaster*, 223 F.3d 1177, 1181 (10th Cir. 2000) ("Based on the plain language of § 2244(d)(2), and in the interest of comity and due deference, we too hold state law must determine when a state habeas petition is considered filed."). Thus, in *Stoot v. Cain,* 570 F.3d 669, 671-72 (5th Cir. 2009), the court held that because Louisiana would have considered the pleading filed on the date the prisoner submitted the pleading to prison officials, a federal court would also consider it filed on that date. *Howland v. Quarterman*, 507 F.3d 840, 844-45 (5th Cir. 2007), by contrast, held that because Texas did not have the mailbox rule for state habeas petitions at the time, the federal court would not consider a pleading filed until it reached the court. *Adams* reached the same result as *Howland*, based on New Mexico law. 223 F.3d at 1181-82. Respondent urges the Court to adopt the same approach as the Fifth and Tenth Circuits. And since Wisconsin courts have not adopted the mailbox rule for § 974.06 motions for post conviction relief, Respondent argues, neither should this Court.

This Court finds the approach taken by the Second and Ninth Circuits more persuasive. Applying federal law to determine whether a filing deadline imposed by federal law is met does not interfere with a state's interpretation of its own law or fail to show proper deference. *See Fernandez v. Artuz*, 402 F.3d at 115, n.3 ("Application of the rule evinces no disrespect for the competence of state courts, their procedures, or the stability of state verdicts."). "Applying the mailbox rule merely grants the full statute of limitations for *pro se* prisoners attempting to reach the courts." *Id.* But regardless of which approach is taken, the Court is satisfied that the timeliness of Ray's claim must

8

A-63

be analyzed under the mailbox rule.  For even though they have not directly applied the mailbox rule to § 974.06 motions, Wisconsin courts, no less than the federal courts, have adopted the principles underlying the rule.

It is hardly surprising that Wisconsin courts have not expressly adopted the mailbox rule for § 974.06 post conviction motions.  Motions for post conviction relief under § 974.06 in Wisconsin have no filing deadline, and thus there is no reason to adopt a rule that operates to excuse a late filing where the litigant is not at fault.  On the other hand, Wisconsin courts have adopted the mailbox rule for state filings that do have a deadline.  In *Nichols v. Litscher*, 2001 WI 119, ¶ 1, 247 Wis. 2d 1013, 635 N.W.2d 292, for example, the Wisconsin Supreme Court, adopting the rationale of *Houston v. Lack*, held that "that the 30-day deadline for receipt of a petition for review is tolled on the date that a pro se prisoner delivers a correctly addressed petition to the proper prison authorities for mailing."  And in *Shimkus v. Sondalle*, 2000 WI App 238, 239 Wis.2d 327, 620 N.W.2d 409, the Wisconsin Court of Appeals applied *Houston* in holding that when a prisoner seeking review of a disciplinary proceeding deposits a state certiorari petition in a prison mail receptacle, the 45-day time limit to file a certiorari action must be deemed tolled.  The fact that Wisconsin courts have not adopted the mailbox rule where there is no need to do so is not an argument for this Court not doing so.  This is especially true where the Wisconsin courts have shown a clear willingness to adopt such a rule when necessary to avoid a forfeiture that occurs through no fault of the *pro se* litigant.

The same considerations that led to the mailbox rule in *Houston v. Lack* apply here.  As a *pro se* prisoner, Ray was powerless and unable to control the time of delivery of documents to the

9

court. 487 U.S. at 270-72. And even though it has not addressed this specific issue, the Seventh

Circuit's reasoning in *Jones* clearly supports the extension of the rule here:

> The rulings extending the mailbox rule are consistent with the notion that prisoners
> filing pro se do not have the same access to the court system as other litigants, and,
> in order for justice to be properly served, their papers should be considered filed
> when given to prison officials. We join the overwhelming authority that the *Houston*
> mailbox rule should be extended to prisoners filing pro se habeas petitions, and, for
> statute of limitations purposes, a petition is deemed filed when given to the proper
> prison authorities and not when received by the district court clerk.

171 F.3d at 502.

The Court therefore concludes that the mailbox rule does apply for purposes of deciding

whether a prisoner's § 2254 petition for habeas corpus relief is barred by AEDPA's statute of

limitations and turns to the question of whether, applying that rule here, Ray's § 2254 petition was

timely.

**B. Was Ray's Filing Timely Under the Mailbox Rule?**

Having concluded that as a general matter the prisoner mailbox rule applies to Wis. Stat.

§ 974.06 motions for post conviction relief, the Court must now determine whether Ray is entitled

to the benefit of that rule. The answer to that question depends upon whether Ray is telling the truth

about having handed his § 974.06 motion to Ms. Smith with prepaid postage on April 27, 2004, and

requested that she mail it to the Circuit Court for Milwaukee County. If Ray did deliver his motion

to Ms. Smith for mailing on that date, then his § 974.06 motion tolled the one-year limitation period

and his § 2254 petition is timely. If he did not, then the limitation period expired and his § 2254

petition must be dismissed.

Before addressing the arguments the parties offer in support of their respective motions, it

will be helpful to note which party bears the burden of proof on the issue. Since the period of

10

limitations is an affirmative defense, Respondent would normally carry the burden of proof on whether it bars Ray's petition. *Gildon v. Bowen,* 384 F.3d 883, 886 (7th Cir. 2004). The prisoner mailbox rule, however, is an exception to the normal statute of limitations, and thus Ray bears the burden of proving that it applies here. *See Knox v. Cook County Sheriff's Police Dept.,* 866 F.2d 905, 907 (7th Cir. 1988) ("While the statute of limitations is an affirmative defense, the burden of establishing an exception thereto is on plaintiff."). Otherwise, Respondent would be required to prove a negative: that Ray did not deliver his motion to prison officials for mailing within the limitations period.

Ray has clearly offered sufficient evidence in support of his claim that he delivered his § 974.06 motion to prison authorities within the one-year limitation period to withstand Respondent's motion to dismiss. As noted above, Ray filed a sworn affidavit in which he recounts that he handed his motion with prepaid postage to Ms. Smith, a social worker at Diamondback Correctional Facility, on April 27, 2004, and requested that she mail it to the Clerk of the Circuit Court for Milwaukee County. (Ray Aff., Ex. 1, ¶ 1.) Attached to his affidavit are copies of the "Certificate Of Service By Mail" that he claims Ms. Smith provided him at the time, the three letters he claims he sent Ms. Smith over the following fourteen months asking her to confirm that his motion had been mailed as he requested, and his October 4, 2006, letter to the Clerk of Court for Milwaukee County inquiring about the status of his motion. (*Id.,* Ex. A, B, C, D, and E.)

In addition, Ray states in his affidavit that after the Seventh Circuit remanded the case to this Court to determine whether his § 2254 petition was timely, he attempted to locate additional documentation confirming his effort to mail his § 974.06 motion on April 27, 2004. While doing so, Ray claims he discovered the Privileged Correspondence Receipt form that Ms. Smith had

11

signed and given to him when he handed her his motion. (Ray Aff. ¶ 15.) On April 18, 2010, Ray states that he gave his Privileged Correspondence Receipt form to Correctional Officer (CO) Nedbal at the NLCI for photocopying. He also submitted a Photocopy Request Form requesting two copies of the Privileged Correspondence Receipt form, as well as a Disbursement Request form authorizing a 30-cent disbursement which was signed by CO Nedbal. (Ray Aff., ¶ 16.) Ray claims, however, that he did not receive his requested copies or his original Privileged Correspondence Receipt back from CO Nedbal. He immediately sent interview/information requests to various staff members at NLCI and even wrote the warden asking about the whereabouts of his copies and his original Receipt. (Ray Aff. ¶¶ 17-18, Exs. I, J, K, L, and M.) On May 6, 2010, NLCI Education Director David Hines wrote a memorandum to Ray in which he explained that according to NLCI records, the copies he requested were made on April 19, 2010, and returned to the library to be sent to Ray on B-Unit through the institutional mail system. Hines assured Ray he had followed up with the librarian and the library officer who recalled placing his copies in the "Institution Mailbag" for return to Ray. (Ray Aff., Ex. O.) Although Hines stated he had followed every lead he could think of to determine the whereabouts of Ray's documents, he would continue his efforts to locate them. (Id.)

This evidence is more than sufficient to support a finding that Ray did in fact hand his motion to a prison official for mailing on April 27, 2004, and thereby defeat Respondent's motion to dismiss. Respondent's motion must therefore be denied. The question Ray's motion for summary judgment presents, however, is whether the evidence Ray has presented is sufficient to warrant summary judgment in his favor. Summary judgment can be granted only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment

12

as a matter of law." Fed. R. Civ. P. 56(a). In response to Ray's motion, Respondent questions the credibility of Ray's statements presented in his affidavit and the reliability of his documents, and suggests there remains a factual dispute over whether Ray delivered his § 974.06 motion to prison officials for mailing prior to September 10, 2004. In the alternative, Respondent requests that the Court set a further briefing schedule since a motion for summary judgment was not contemplated by the briefing schedule the Court set on the issue.

Ray argues in reply (or sur-reply) that he has presented more than enough evidence to demonstrate that under the mailbox rule his state post conviction motion was timely and therefore tolled the statute of limitations for his § 2254 petition. He notes that Respondent has offered no evidence that he did not properly deliver his motion to prison officials as he claims, but instead simply dismisses his affidavit as self-serving and challenges his documentation as unreliable. This, Ray argues, "is plainly insufficient." (Pet.'s Sur-Reply to Resp.'s Br. at 8.)

In the context of this case, however, it is not. As noted above, Ray carries the burden of proving that the mailbox rule exception to the statute of limitations defense applies, and while his evidence is sufficient to support a finding that it does, it is not so overwhelming as to compel such a finding. At its core, the issue is one of Ray's credibility, and summary judgment is not an appropriate tool for resolving credibility issues. *See* Fed. R. Civ. P. 56(e), Advisory Committee Note to 1963 Amendment ("Where an issue as to a material fact cannot be resolved without observation of the demeanor of witnesses in order to evaluate their credibility, summary judgment is not appropriate."); *see also Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003) ("On summary judgment a court may not make credibility determinations, weigh the evidence, or decide which inferences to draw from the facts; these are jobs for a factfinder.") (citing *Anderson v. Liberty*

13

*Lobby, Inc.*, 477 U.S. 242, 255 (1986)). This is particularly true when the record suggests reasons to question the credibility of the witness whose testimony provides the factual basis upon which summary judgment is sought. That is the case here.

As Respondent notes, there is no independent corroboration of Ray's claim that he delivered his motion to Ms. Smith for mailing on April 27, 2004. The "Certificate Of Service By Mail" which Ray claims Ms. Smith gave him raises more questions than it answers. The certificate bears no signatures, other than Ray's, and appears on plain white paper with no heading or other indication that it is an official prison form. In both form and content it looks more like the product of a prisoner than a prison administration.

The various letters attached to Ray's affidavit offer little more. Although Ray claims they are copies of actual letters he sent to Ms. Smith on the dates indicated, he offers nothing but his own word to support his claim. The letters were not retrieved from Ray's prison file, but are apparently photocopies he claims he retained. There is no independent date stamp, nor do they contain the address to which they were allegedly sent. Indeed, Ray's own version of the events, which he claims the letters document, raises a number of questions. For example, why did he continue to write Ms. Smith over a fourteen month period asking her to confirm that she placed his motion in the mail when she never responded to him? When she failed to respond to his initial inquiry in his letter of June 1, 2004, why didn't he immediately ask the Clerk of Court for Milwaukee County about the status of his motion instead of waiting more than two years to do so? "A failure to inquire about a lost petition is strong evidence that the petition was, in fact, never sent." *Stoot v. Cain*, 570 F.3d at 672. Inquiry that is obviously ineffective also raises questions.

14

A-69

Questions also surround the one piece of documentary evidence, now missing, that Ray claims memorializes the fact that he delivered to her his § 974.06 motion for post conviction relief on April 27, 2004, and that bears the signature of Ms. Smith – the "CCA Privileged Correspondence Receipt." Ray did not include that document with the other documents he initially submitted with his original § 2254 application on February 28, 2007 (Dkt. 3), but claims he discovered it among his papers after the Court of Appeals found in his favor on his confrontation clause claim and remanded the case for a determination whether his petition was timely. (Ray Aff. ¶ 14-15.) Ray claims that NLCI officials lost this document after he delivered it to them for copying.

Although Ray has offered a number of documents that support his claim that he gave the Privileged Correspondence Receipt to a NLCI officer for copying and authorized a disbursement from his account to pay for it, the record does not disclose the type of information necessary to assess such evidence. For example, do Correctional Officers who are asked to copy documents for inmates check the document the inmate asks them to photocopy to make sure that it is the same as the document the inmate described in his Photocopy Request and Disbursement forms? If not, it is possible that the document Ray claims he gave CO Nedbal for copying was not what he claims it was and what he described in his request forms. According to NLCI Education Director Hines, the prison records show the copies were made and placed in the institution mailbag for delivery to Ray. (Ray Aff., Ex. O.) What records does the institution have, and how are they kept? How frequently is mail lost? The answer to these and similar questions, as well as the opportunity to observe Ray's demeanor, are necessary to allow the Court to evaluate Ray's credibility and determine whether he is telling the truth about having delivered his motion to Ms. Smith as he claims.

15

Of course, in raising these questions, the Court is not suggesting that Ray is not telling the truth. Indeed, to find that Ray is not telling the truth, one would have to conclude not only that Ray conceived of an exceptionally clever way to avoid AEDPA's statute of limitations, but that since October of 2006, if not earlier, he has been carefully manufacturing evidence to help him carry it out, even going so far as to induce NLCI officials to unwittingly provide independent corroboration. At first glance, it might appear highly unlikely that a prison inmate would have the intelligence and ingenuity to concoct such a story and manufacture the evidence to support it. At the same time, however, it is clear that models do exist, even in the same prison where Ray was housed, which can serve as a blueprint for a bright inmate to use to design his own plan for avoiding AEDPA's procedural obstacles. *See Gallion v. Boatwright*, No. 07-C-0798, 2008 WL 2801916 (E.D. Wis. July 18, 2008) (finding habeas petition filed by NLCI inmate timely under mailbox rule based on inmate's affidavit corroborated by signed Disbursement Request form). The plain fact is that the Court does not know and, on this record, is unable to determine whether Ray's version is true. It is for this reason that an evidentiary hearing is required.

Accordingly, Respondent's motion to dismiss and Ray's motion for summary judgment are denied. The Clerk is directed to set this matter on the Court's calendar for a telephone conference to address further scheduling.

**SO ORDERED** this ___22nd___ day of April, 2011.


  ___s/ William C. Griesbach_____
  William C. Griesbach
  United States District Judge


16

A-71